Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/19/2019 08:05 AM CDT

Sharon B. Leners, appellant, v.
Stacy M. Leners, appellee.

___ N.W.2d ___

Filed April 19, 2019.    No. S-18-072.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.
2. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.
3. **Divorce: Property Division: Pensions.** In dissolution proceedings, the trial court has broad discretion in valuing and dividing pension rights between the parties.
4. **Child Custody.** While the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration.
5. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue.
6. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
7. **Courts: Attorney Fees.** Courts have the inherent power to award attorney fees in certain unusual circumstances amounting to conduct during the course of litigation which is vexatious, unfounded, and dilatory, such that it amounts to bad faith.

Appeal from the District Court for Gage County: RICKY A. SCHREINER, Judge. Affirmed.

Philip B. Katz and Steven J. Riekes, of Marks, Clare & Richards, L.L.C., for appellant.

Megan M. Zobel, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

INTRODUCTION

Sharon B. Leners appeals from a decree dissolving her marriage to Stacy M. Leners. Although the district court may have overstated Sharon's entitlement to a divorced spouse annuity in connection with Stacy's railroad pension, it did not abuse its discretion in awarding Stacy his entire pension in equitably dividing the marital estate. Having reviewed the record de novo, we cannot say that the court's determinations regarding custody, parenting time, child expenses, and attorney fees were untenable. We affirm the decree.

BACKGROUND

The parties married in 1997. In 2016, Sharon filed a complaint to dissolve the marriage. At that time, the parties had two minor children, one born in 1998 and the other in 2002.

On July 31, 2017, the court entered a temporary order awarding the parties joint custody of the children. Because Stacy's employment takes him to different locations around the country from the 1st through the 8th day of the month and then the 16th to the 23d day of each month, the court provided him parenting time every month on the 9th to the 15th day and on the 24th to the last day of the month.

Three weeks later, the court conducted a trial. We summarize only the evidence relevant to the issues on appeal.

## CUSTODY

The custody issue focused on the 15-year-old child, because the other child soon would be turning 19 years old (and did shortly before entry of the decree). The 15-year-old child testified in camera, and the court sealed her testimony. We consider this testimony in our de novo review, but decline to summarize it.

Both parties described a positive relationship with the child. Stacy requested shared legal and physical custody of the child, but Sharon asked for sole custody. According to Sharon, the temporary custody and parenting time arrangement was not in the child's best interests, because it caused the child to cry and to be irritable and argumentative. Sharon did not believe that joint physical custody would work on a permanent basis. She anticipated having difficulty obtaining the child's compliance and did not "feel [she] should have to force a 15[-]year-old" to comply with the parenting plan. Stacy testified to a willingness to put aside personal differences and work with Sharon even though he had been unable to do so in the past.

The parties offered different parenting time plans for the court's consideration. Sharon proposed that Stacy have parenting time every other weekend from after school on Friday until 10 a.m. on Sunday and on Thursdays each week from after school until 8 p.m. But Stacy testified that such a plan would leave him little one-on-one time with the child due to the child's activities and Stacy's work schedule. Stacy essentially asked for an extension of the temporary plan.

## PENSIONS

Sharon is a registered nurse, and her proposed child support worksheets show her monthly income to be $3,693. Through her employer, she has a 401K account and a pension. She also has a Nebraska Public Employees Retirement Systems account. In Sharon's proposed property division, she included the latter account and the 401K under her column at a total value of $38,301.28. Stacy's proposed property division additionally

included Sharon's pension from her employer at a value of $250 per month.

Stacy has worked for Union Pacific Railroad for nearly 12 years. He is a "system semi driver," and his proposed child support worksheet showed his monthly income to be $5,208. Stacy did not have a thorough understanding of his railroad pension, but he believed that the tier I component was not divisible, while the tier II component was. According to Stacy, Sharon was eligible to receive a payment from his railroad pension and she would receive some of his pension after they were divorced even without any order from the court. Stacy's proposed property division suggested that Sharon receive a divorced spouse benefit of unknown value and that he would receive his 401K valued at $49,290. Sharon's proposed property division showed that the "Railroad Retirement Board Creditable Compensation" of unknown value should be divided by a qualified domestic relations order.

The court received a "Statement of Railroad Employee's Actual or Estimated Railroad Retirement Benefits" dated January 19, 2017, which was furnished for use in connection with a divorce. The statement reflected an estimate of Stacy's current monthly benefit based upon employment with the railroad through December 1, 2015, assuming that he were now retired and entitled to payment of benefits. It showed the following monthly railroad benefit amounts:

Tier I railroad retirement benefit component . . . $956.00
Divisible railroad retirement benefit components
(Tier II, supplemental annuity, dual benefits) . . . $253.50
Total monthly railroad retirement benefits . . . $1,209.50
**Caution**: The Tier I benefit component is not subject to division, and the Railroad Retirement Board will not recognize any property division made with respect to it.

The statement contained a section addressing the "Railroad Retirement Divorced Spouse Benefit Estimate." That section provided: "Assuming current entitlement under the Railroad Retirement Act, the divorced spouse benefit for the spouse

of this railroad employee would be an estimated $441.00 per month, effective May 1, 2037, minus any social security benefits for the same month."

## ATTORNEY FEES

Sharon informed Stacy that she was "not going to deal with him" and that any communications had to go through their attorneys. According to Sharon, the parties cannot "get along" and the police had been called five or six times to "keep the peace." Stacy testified that he had incurred significant attorney fees to obtain parenting time and to obtain access to personal property. He testified he incurred attorney fees unnecessarily, and an exhibit showed his fees to be $14,982.50 prior to trial. Sharon's attorney fees amounted to $13,867.75.

## DECREE

The court dissolved the parties' marriage. It specifically found Stacy's testimony to be more credible than the testimony of Sharon. The court characterized the matter as "extremely contentious," explaining:

> The parties have involved law enforcement multiple times, they have each requested temporary relief from the court including motions for temporary custody, parenting time, access to the marital home, possession of personal property, payment of expenses and support issues. They have each said and done things not becoming including but not being limited to name calling. The parties have made it very clear to one another, and to the Court, that they are not able to get along.

The court awarded the parties shared legal and physical custody of the children. It adopted the parenting time schedule proposed by Stacy, which awarded Stacy regular parenting time on the same days set forth in the temporary order. The court ordered each party to be responsible for one-half of the reasonable and necessary medical expenses of the child and of any mutually agreed-upon expenses for the child's activities.

The court awarded Sharon as her sole and separate property her 401K and pension and her Nebraska Public Employees Retirement Systems account. It awarded Stacy as his sole and separate property his Union Pacific Railroad pension and his 401K. The court entered judgment in favor of Sharon in the amount of $50,019 and ordered that Sharon pay Stacy $9,000 for his attorney fees.

Following the court's denial of Sharon's timely motion for new trial and motion to alter or amend, she brought this timely appeal. We moved the case to our docket.[1]

## ASSIGNMENTS OF ERROR

Sharon assigns that the court erred in (1) interpreting federal law regarding retirement benefits that may be available for equitable distribution, (2) awarding joint custody and equal parenting time, (3) failing to allocate child expenses, and (4) awarding attorney fees to Stacy.

## STANDARD OF REVIEW

[1] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.[2]

[2] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[3]

## ANALYSIS

### Retirement Benefits

Retirement pensions for railroad employees are governed by federal law. The Railroad Retirement Act of 1974[4] provides

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

[2] *Wiedel v. Wiedel*, 300 Neb. 13, 911 N.W.2d 582 (2018).

[3] *Gerber v. P & L Finance Co.*, 301 Neb. 463, 919 N.W.2d 116 (2018).

[4] 45 U.S.C. § 231 et seq. (2012).

two tiers of benefits.[5] Tier I benefits correspond to those an employee would receive if covered by the Social Security Act.[6] Tier II benefits are like a private pension, and the benefits are tied to earnings and career service.[7] "In the past, courts were prohibited from awarding one spouse an interest in benefits to which the other spouse became entitled under the Railroad Retirement Act."[8] But Congress amended the act, and the Railroad Retirement Board must "honor a decree of divorce characterizing tier II benefits as property subject to distribution."[9] Tier I benefits remain excluded from consideration as divisible marital property.[10]

[3] In dissolution proceedings, the trial court has broad discretion in valuing and dividing pension rights between the parties.[11] Here, the court awarded each party his or her own 401K and pension as that party's sole and separate property. Sharon argues that the court erred in interpreting federal law regarding retirement benefits available for equitable distribution and that the court should have equitably divided Stacy's tier II pension benefits. But it appears that the court's awarding each party his or her own pension was an effort to equitably divide the entire marital estate: an effort unaided by any evidence as to a present dollar value for either pension. The record does reflect that Sharon's pension would amount to approximately $250 per month, while the tier II component of Stacy's pension would be $253.50 per month for "reduced age" or $360 per month for "full age and service annuity." The record does not show whether Sharon's

---

[5] See *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979).

[6] See *id.*

[7] See *id.*

[8] *Shearer v. Shearer*, 270 Neb. 178, 181, 700 N.W.2d 580, 584 (2005).

[9] *Id.*, citing 45 U.S.C. § 231m(b)(2) (2000), and 20 C.F.R. § 295.1 (2005).

[10] See *McGraw v. McGraw*, 186 W. Va. 113, 411 S.E.2d 256 (1991).

[11] *Webster v. Webster*, 271 Neb. 788, 716 N.W.2d 47 (2006).

monthly pension amount is "reduced age." Either way, we find no abuse of discretion by the court in awarding Stacy his railroad pension.

Sharon also contends that the court erroneously assumed she would receive a divorced spouse annuity. In connection with awarding each party his or her own pension, the court explained:

> In so ordering, the Court notes that as it currently stands, [Sharon] shall receive a substantial sum from Union Pacific as a divorced spouse pension. [Stacy's] pension (employee annuity) amount shall be his and his alone. To allow [Sharon] to receive her entire share of the divorced spouse pension (ranging between $441 and $679), plus half of his pension ($1209 divided by 2 = $604.50 or $17[1]9 divided by 2 = $859.50) would result in her pension payout being nearly 2/3s of the total. Such a result is inequitable. In reaching this conclusion, the Court has taken into account that [Sharon] shall receive all of her $250 monthly pension from [her employer].

We agree with Sharon that there is no guarantee she will receive "a substantial sum from Union Pacific as a divorced spouse pension." To be eligible, a divorced wife must not be married[12] and must not be entitled to Social Security benefits greater than the divorced spouse annuity.[13] This error favored Stacy. But, on the other hand, the court's calculation of the divisible portion of Stacy's pension erroneously favored Sharon. Because federal law precludes marital division of tier I benefits, the correct numbers for Stacy's tier II pension would have been between $253.50 and $360 instead of $1,209 and $1,719. Thus, even assuming that Sharon would be entitled to no divorced spouse annuity, we find no abuse of discretion in the court's equitable division of the marital estate.

---

[12] See 45 U.S.C. § 231a(c)(4)(ii).

[13] See, 45 U.S.C. § 231a(f)(2); 20 C.F.R. § 226.30(f) (2018).

CUSTODY AND PARENTING TIME

The court awarded the parties shared legal and physical custody and equal parenting time. Sharon argues that the arrangement is not in the younger child's best interests and that the court should have awarded her primary custody and parenting time.

[4] Nebraska law explicitly provides that a court shall consider "[t]he desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning."[14] We have held that while the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration.[15] In our de novo review, we have considered the child's age, her preference, and her reasoning. Her testimony concerning her relationship with each parent and custody preference did not contradict the parties' testimony that they each had a good relationship with the child.

[5,6] In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue.[16] In a marital dissolution action, we conduct such a review to determine whether the trial judge abused its discretion.[17] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[18]

Here, both parties are fit and proper parents. The court attempted to fashion a parenting time schedule that would

---

[14] Neb. Rev. Stat. § 43-2923(6)(b) (Reissue 2016).

[15] See *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002).

[16] *Connolly v. Connolly*, 299 Neb. 103, 907 N.W.2d 693 (2018).

[17] See *id.*

[18] *Id.*

accommodate Stacy's rather unusual work schedule, minimize the communication and coordination between the parties, and still serve the child's best interests. The court observed that Sharon's parenting plan—which would allow Stacy parenting time on four overnights twice a month but would vary on days of the week and days of the calendar—would require the parties to frequently communicate and cooperate in order to avoid conflict. The court reasoned:

> It is in the best interest of the minor children that they have a good, strong, positive relationship with each parent. To have the same, it is necessary for each parent to have significant periods of time with the minor children. The best way to ensure the fewest exchanges for the minor child and minimize the contact between the parties is to set a schedule based on the known factors including [Stacy's] work schedule. By doing so, it is established exactly what the parenting time schedule is and eliminates the strong possibility of further conflict or disagreement between the parties.

Although the court referred to "children," from the context, it is clear that the court's decree addressed only the younger child.

Here, the court decreed "shared" rather than "joint" custody. But, at least here, that seems to be a matter of semantics. And we recognize that we have said joint physical custody must be reserved for those cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction, and will provide a stable atmosphere for the child to adjust, rather than perpetuating turmoil or custodial wars.[19] While generally sensible, this is not a hard-and-fast rule. A statute specifically provides that a court may order joint custody "if

---

[19] See *Donald v. Donald*, 296 Neb. 123, 892 N.W.2d 100 (2017).

the court specifically finds, after a hearing in open court, that joint physical custody or joint legal custody, or both, is in the best interests of the minor child regardless of any parental agreement or consent."[20] And we have affirmed a trial court's decision not to modify an award of joint legal custody even though the evidence showed that the parties continued to have difficulty communicating and cooperating with one another.[21] In light of Stacy's unusual work schedule, the court's favorable contrast of his credibility and reasonableness to Sharon's, and the child's relationship with both parents, we cannot say that the court's award of shared custody and parenting time is untenable.

### Allocation of Expenses

Because we are affirming the award of shared custody, we consider Sharon's claim that the court erred in failing to allocate expenses. Sharon argues that except for medical expenses provided in the decree, the court did not require that "all reasonable and necessary expenses of the child, including but not limited to clothing and extracurricular activities, be equally divided and not require any mutual agreement."[22]

A statute requires a decree to address the parties' responsibility for certain child expenses. "A decree of dissolution . . . shall incorporate financial arrangements for each party's responsibility for reasonable and necessary medical, dental, and eye care, medical reimbursements, day care, extracurricular activity, education, and other extraordinary expenses of the child and calculation of child support obligations."[23] And Neb. Ct. R. § 4-212 (rev. 2011) provides that when child support

---

[20] See Neb. Rev. Stat. § 42-364(3)(b) (Cum. Supp. 2018).

[21] See *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015).

[22] Brief for appellant at 23 (emphasis in original).

[23] Neb. Rev. Stat. § 42-364.17 (Reissue 2016).

is to be calculated using worksheet 3, "all reasonable and necessary direct expenditures made solely for the [child] such as clothing and extracurricular activities shall be allocated between the parents."

The decree, together with attachments, allocated the necessary expenses. As Sharon observes, the decree ordered the parties to each be responsible for one-half of the reasonable and necessary medical expenses. The parenting plan additionally required the parties to each "be responsible for the clothing, personal property, food and entertainment of the children during their own parenting time" and to "pay one-half of any mutually agreed upon expenses for activities of the minor children so long as the same is clearly stated and agreed to in writing prior to such expense being incurred."

Although Sharon's brief was not entirely clear, she confirmed that she was arguing that the district court should not have made any of the expenses for extracurricular activities subject to mutual agreement. Or, stated another way, that the decree should have required one parent to pay one-half of the child's expenses for extracurricular activities authorized solely by the other parent. We do not agree that § 4-212 requires a trial judge to grant one parent carte blanche to compel the other parent to pay (either wholly or partially) for every conceivable extracurricular activity for a child. Certainly, the parties may agree to divide extracurricular activities in that way.[24] But here, they did not agree.

Section 4-212 contemplates allocation between the parents of "all reasonable and necessary direct expenditures made solely for the [child] such as . . . extracurricular activities." The record here does not establish that all of the child's potential expenses for extracurricular activities met that standard. And given the acrimonious dispute on virtually every issue and the court's assessment of Sharon's credibility regarding an

---

[24] See *Moore v. Moore, ante* p. 588, 924 N.W.2d 314 (2019).

extracurricular activity, the court could reasonably anticipate that the reasonableness and necessity of such expenses would be another source of contention—particularly if the court permitted Sharon to unilaterally dictate which activities would be permitted. Although Sharon filed a motion to alter or amend the decree, her motion did not specify any particular expenses to be so allocated. The tenor of the court's decree shows that it trusted Stacy, but not Sharon, to be reasonable. If subsequent events show that Stacy responds unreasonably, the court has the tools to compel an equitable solution. We conclude that the court did not abuse its discretion in allocating reasonable and necessary expenses of the child.

## Attorney Fees

Sharon contends that the court abused its discretion by ordering her to pay Stacy $9,000 in attorney fees. Stacy requested such an award, but the decree did not specifically explain why the court imposed these fees. Nonetheless, from the court's specific findings, we discern a legal rationale.

[7] Courts have the inherent power to award attorney fees in certain unusual circumstances amounting to conduct during the course of litigation which is vexatious, unfounded, and dilatory, such that it amounts to bad faith.[25] The decree set forth specific findings identifying Sharon's conduct.

The court found that Sharon "doused in diesel fuel" some of Stacy's clothing and destroyed Stacy's grandmother's dishes by "intentionally shooting [them] with a gun." Sharon admitted that at the beginning of the proceeding, she told Stacy repeatedly in text messages that because he was the one who left, he was going to have to "pay for it." Clearly, this conduct was, and was intended to be, vexatious. There was evidence that Stacy incurred attorney fees attempting to obtain parenting time and access to personal property and relating to the filing of tax returns.

---

[25] *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018).

The court's decree provided a number of examples why it found Stacy's testimony to be more credible, recounting numerous instances where Sharon's testimony was unfounded. According to the decree:

[Sharon's] testimony regarding the creation of the calendars she purported to have been created simultaneously with the events proved to be inaccurate in that the calendars were printed in March of 2017 and purported to reflect events dating back six months prior[, and] was not credible. [Sharon's] testimony regarding her lack of knowledge of the birthdate, approximate age or address of the gentleman she had been dating for seven months prior was suspect. [Sharon's] testimony that [the older child] lived in the marital home through the date of trial was admitted to be false on cross examination when she admitted that [the older child] had not stayed overnight in the home since May of 2017. [Sharon's] testimony that [the older child] has never stayed overnight with [Stacy] since separation was admitted to be false on cross-examination. [Sharon's] testimony that she did all of the transporting of [the younger child] during the marriage was also admitted to be false on cross examination when she admitted that when [Stacy] was not working, he picked [the child] up from school each day. [Sharon's] testimony in her affidavit for temporary custody and her matching testimony at trial that [Stacy] promised to pay one-half of the current cheer bill of $260 a month was also admitted by her on cross examination to be false when she admitted that [Stacy] told her he could not afford to pay the increased fee of $260 a month (compared to the $110 a month) for [the cheer bill] and further she admitted that he had never agreed to pay it.

The record supports Stacy's testimony that the attorney fees he incurred were often unnecessary and resulted from Sharon's vexatious, unfounded, and dilatory conduct. Having

reviewed the record along with the parties' arguments, we cannot say that the court's award of attorney fees was an abuse of discretion.

## CONCLUSION

Having reviewed the record de novo, we conclude that the court did not abuse its discretion in awarding Stacy his railroad pension, ordering shared custody and parenting time, addressing reasonable and necessary child expenses, and awarding attorney fees. We therefore affirm the decree.

Affirmed.