IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE ON BEHALF OF PIERCE K. V. JACOB K.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA ON BEHALF OF PIERCE K., A MINOR CHILD, APPELLEE,

V.

JACOB K., DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLEE,
AND MANDY M., THIRD-PARTY DEFENDANT, APPELLANT.

Filed March 23, 2021.    No. A-20-627.

Appeal from the District Court for Douglas County: LEIGH ANN RETELSDORF, Judge. Affirmed.

Steven M. Delaney and Megan E. Shupe, of Reagan, Melton & Delaney, L.L.P., for appellant.

No appearance for appellee State of Nebraska.

Stephanie Weber Milone, of Milone Law Office, for appellee Jacob K.

MOORE, RIEDMANN, and BISHOP, Judges.

PER CURIAM.

### INTRODUCTION

Mandy M. appeals the order of the district court for Douglas County which modified custody of her minor child to award sole legal and physical custody to Jacob K., subject to Mandy's parenting time. Jacob cross-appeals the denial of his request for attorney fees. Finding no abuse of discretion in the district court's decisions, we affirm.

### BACKGROUND

Mandy and Jacob are the parents of Pierce K., who was born in 2009. A paternity decree was entered in 2013 establishing Jacob as Pierce's father, awarding sole legal and physical custody

- 1 -

to Mandy, and scheduling parenting time for Jacob. Jacob was also ordered to pay child support. In 2015, the parties agreed to modify the decree, and the district court approved their modifications, which included amending Jacob's parenting time to every other week from Tuesday after school until Monday morning before school.

At the time of the 2013 and 2015 decrees, Mandy resided in Papillion, Nebraska, and Jacob resided in Gretna, Nebraska, and regularly exercised his parenting time with Pierce. Beginning in kindergarten, Pierce attended an elementary school in Ralston, Nebraska. In October 2019, at the beginning of Pierce's fifth grade year, however, Mandy moved with Pierce and her younger son to York, Nebraska. Jacob learned that Mandy was moving to York when he received an email from her attorney at the time, and he discovered that she had withdrawn Pierce from his school in Ralston when a teacher mentioned it to him during parent-teacher conferences.

After Mandy moved to York, Jacob did not receive all of his parenting time because the distance between Jacob's home in Gretna and Pierce's school in York is approximately 94 miles. Mandy admitted that she knew it would not be possible for the parties to maintain their existing parenting time arrangement when she moved to York and that she was unwilling to be solely responsible for transporting Pierce between York and Gretna.

Thus, on October 22, 2019, Jacob filed an application to hold Mandy in contempt for violating the parenting plan, and shortly thereafter, he filed a complaint to modify the decree. He alleged that since entry of the 2015 order of modification, there had been material changes in circumstances warranting modification, including Mandy moving to York and enrolling Pierce in school there, Mandy denying Jacob his parenting time, the expectation that he drive Pierce to and from York in order to exercise his parenting time, changes in the parties' incomes, changes in expenses related to Jacob exercising his parenting time, and revisions to the Nebraska Child Support Guidelines. Jacob therefore asked the court to award him sole legal and physical custody of Pierce, or in the alternative, award the parties joint legal and physical custody. He also sought to modify child support.

Mandy filed an answer and counterclaim through which she also alleged that there had been material changes in circumstances which warranted modifying Jacob's parenting time and child support. She later amended her answer and counterclaim but reiterated her request that she retain sole legal and physical custody subject to amended parenting time for Jacob and that the court recalculate child support and expenses.

The district court held a show cause hearing on Jacob's motion to hold Mandy in contempt for denying him his parenting time. The court subsequently found Mandy in willful contempt of the court-ordered parenting plan. The court's order provided that Mandy could purge the contempt finding by complying with the parenting plan.

Thereafter, the court held a joint hearing for sentencing on the contempt finding and the complaint and counterclaim for modification of the decree. The evidence established that Jacob was employed as a medical recruiter, working Monday through Friday from 8 a.m. until 5 p.m. He was married and has a 3-year-old son with his wife.

Prior to Mandy's move to York, Jacob exercised all of his parenting time with Pierce, but due to the distance, he was no longer able to receive all of the time to which he was entitled. The drive between Gretna and York takes 90 minutes, and Jacob testified that "having a child in the car for three hours a day just doesn't work." Jacob described his relationship with Pierce as "really

good" and explained that he wanted custody of Pierce so that Pierce could return to Gretna to live with him and re-enroll at his previous school in Ralston.

Mandy agreed that due to the distance between the parties, it would no longer be possible to maintain the existing parenting time schedule. Mandy has a younger son who was 1 year old at the time of the hearing. Prior to moving to York, Mandy lived in Papillion with her sons and the father of her younger child and was not working at that time. When her younger son's father moved out, she elected to move to York so she could live with her parents. She testified that the reason for her move to York was "purely financial."

Mandy now owns a home in York and works Monday through Friday, from 8 a.m. until 5 p.m., as a loan assistant at a bank. She also receives child support for her younger son in the amount of $340 every 2 weeks. Her mother watches her younger son while Mandy is at work. Mandy testified that her relationship with Pierce is "wonderful" and that she has always been his primary caregiver. Pierce initially appeared to have adjusted well after moving to York. After a while, however, Mandy began to notice that he was having some difficulties when he would return home from his time with Jacob, so she started taking him to see a counselor in late 2019 or early 2020.

Mandy did not look for a job in Omaha prior to moving to York, and she understood that if she had found a job in Omaha, Pierce could have remained closer to Jacob. Mandy was asked how she expected Jacob to receive his parenting time after she moved to York, and she said that her attorney at the time told her that she was permitted to move and that Jacob would ask the court to modify the parenting plan. Mandy confirmed that she intended to remain living in York even if physical custody of Pierce were to be awarded to Jacob. She acknowledged that there are opportunities for her job to be transferred to a different bank location, potentially closer to the Omaha area, but stated that she "see[s] no reason" to explore those opportunities.

Pierce was 11 years old at the time of the hearing. He testified in-camera and his testimony was sealed. We will reference his testimony as necessary below to address the arguments raised on appeal.

At the conclusion of the hearing, the district court ruled from the bench that riding in a car for 3 hours per day between York and Gretna was not in Pierce's best interests, and therefore, the existing parenting plan was no longer feasible. The court found portions of Mandy's testimony to be "inconsistent." The court noted that Mandy moved to York knowing that doing so would mean she was unable to comply with the parenting plan, but yet she testified that she had no intention of taking time with Pierce away from Jacob. Similarly, Mandy indicated that the existing parenting plan is what Pierce has known most of his life so disrupting it would not be in his best interests, yet she acknowledged that her move to York disrupted the very parenting plan that she believed to be in his best interests.

The court further observed that there was no indication that Pierce had any struggles prior to moving, which occurred as a result of Mandy's unilateral decision to disrupt the parenting schedule that had been working well. The court recognized that Mandy's move was primarily financially motivated but found that some of her concerns should be alleviated now that she receives approximately $680 per month in child support for her younger son.

Mandy had raised some concerns regarding the involvement of Jacob's wife in issues related to Pierce. The district court, however, did "not have any problem with [Jacob] involving

his wife in the raising of children, be they stepchildren or biological children" and had no problem with Jacob's wife being involved in any decision-making.

The court determined that the existing parenting plan had worked well and was in Pierce's best interests. But because Mandy would not take any steps toward making it workable again, the court ordered from the bench that it was modifying the decree to award physical custody of Pierce to Jacob. And because Jacob would have physical custody and Pierce would attend school in the Omaha area, the court also awarded legal custody to Jacob.

After the hearing but prior to entry of a written modification order, the district court entered an order finding that Mandy had not purged herself of contempt, but in light of the court's decision to award legal and physical custody to Jacob, it decided not to impose further sentence on Mandy. However, the court required Mandy to pay attorney fees related to the contempt action to Jacob in the amount of $1,254.

The district court entered a subsequent written order in which it detailed the material changes in circumstances affecting the best interests of the child that have occurred since entry of the 2015 order, including Mandy's move with Pierce from Papillion to York and corresponding change in his school and Mandy having been found in contempt for failing to comply with the court-ordered parenting plan following her move to York. Thus, the court determined that it would be in Pierce's best interests to modify the decree and award legal and physical custody of Pierce to Jacob. Mandy was awarded parenting time on alternating weekends from Friday at 6:30 p.m. through Sunday at 7 p.m. The modification order specified holiday parenting time between the parties and set forth that during Pierce's summer break from school, Jacob and Mandy will alternate weeks of parenting time. Each parent additionally received two 7-day periods of uninterrupted vacation parenting time during the year. The court recalculated child support and ordered Mandy to pay $314 per month to Jacob. Neither party was awarded attorney fees. Mandy appeals, and Jacob cross-appeals.

## ASSIGNMENTS OF ERROR

Mandy assigns, restated and renumbered, that the district court erred in (1) modifying the decree to award legal and physical custody to Jacob, (2) failing to award joint legal and physical custody, (3) failing to consider Pierce's testimony, and (4) ordering her to pay child support, or in the alternative, failing to include an abatement for child support for summer parenting time.

On cross-appeal, Jacob assigns that the district court erred in failing to award him attorney fees.

## STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *State on behalf of Tina K. v. Adam B.*, 307 Neb. 1, 948 N.W.2d 182 (2020).

## ANALYSIS

Mandy first asserts that the district court erred in modifying the decree to award legal and physical custody of Pierce to Jacob. We find no abuse of discretion in the court's decision.

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing either that the custodial parent is unfit or that the best interests of the child require such action. *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020). We have described this showing as a two-step process: First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. *Id*. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Id*.

Mandy does not dispute that her relocation to York constitutes a material change in circumstances affecting Pierce's best interests. There is no claim or finding that either parent is unfit. The question before us, therefore, is whether the district court abused its discretion in finding that modifying the decree to award legal and physical custody to Jacob was in Pierce's best interests.

When determining the best interests of the child in the context of custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *Id*. Other relevant considerations include stability in the child's routine, minimalization of contact and conflict between the parents, and the general nature and health of the individual child. *Id*. No single factor is determinative, and different factors may weigh more heavily in the court's analysis, depending on the evidence presented in each case. The one constant is that the child's best interests are always the standard by which any custody or parenting time determination is made. *Id*.

In reaching its decision in the present case, the district court relied heavily on Mandy's decision to move to York. The court believed that the existing parenting plan continued to be in Pierce's best interests, but Mandy's unilateral decision made it impossible to continue the existing schedule without forcing Pierce to regularly endure a lengthy commute between Gretna and York, which was not in his best interests. And Mandy refused to take any steps to ensure that the parties were able to continue the existing parenting time arrangement. The district court noted that there was no indication that Pierce had any struggles prior to moving to York.

We have reviewed Pierce's in-camera testimony, and without going into great detail, it is clear that he loves both of his parents, that he has a good relationship with each of them, and that the previous parenting plan was working well for him. He acknowledged the difficulty in moving to York and leaving his friends behind and expressed that he wished he could see a friend who lives close to Jacob more often and spend more time with Jacob's younger son. Ideally, he would like to spend equal time with his parents.

Given the foregoing evidence, we conclude that the district court did not abuse its discretion in finding that awarding legal and physical custody to Jacob was in Pierce's best interests. This decision will allow more stability in the child's routine by placing him back into the situation with which he is familiar. The court explained that preferably, Pierce would be enrolled back into his previous school in Ralston and that its goal was to "have him be back with the friends that he cared about" and not have him travel between his parents during the school week.

Accordingly, we affirm the court's decision to modify the decree to award legal and physical custody of Pierce to Jacob.

Mandy additionally argues that if the court were correct in modifying custody, it abused its discretion by failing to award joint legal and physical custody. We disagree.

Joint physical custody means mutual authority and responsibility of the parents regarding the child's place of residence and the exertion of continuous blocks of parenting time by both parents over the child for significant periods of time. Neb. Rev. Stat. § 43-2922 (Cum. Supp. 2020). Awarding Mandy and Jacob each continuous blocks of parenting time would result in Pierce spending a significant amount of time traveling during the week. The district court found that commuting for 3 hours per day was not in his best interests. Thus, joint physical custody was not feasible with Mandy living in York and Jacob living in Gretna.

Likewise, the court explained from the bench that it did not believe that joint legal custody was appropriate because it appears that Mandy and Jacob do not communicate very well and that their communication has continued to deteriorate. Joint legal custody means mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health. § 43-2922(11). This court has previously acknowledged that courts typically do not award joint legal custody when the parties are unable to communicate effectively. See *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016). Where the parties are unable to communicate and trust one another, joint decisionmaking by the parents is not in the child's best interests. See *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009). The district court's decision not to award joint legal or physical custody was therefore not an abuse of discretion.

Mandy next asserts that the district court erred by failing to consider the in-camera testimony of Pierce. She claims that it does not appear from the record that the court even considered Pierce's testimony. Our review of the record suggests otherwise.

Nebraska law explicitly provides that a court shall consider "[t]he desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning." Neb. Rev. Stat. § 43-2923(6)(b) (Reissue 2016). See, also, *Leners v. Leners*, 302 Neb. 904, 925 N.W.2d 704 (2019), *disapproved on other grounds, State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). While the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration. *Leners v. Leners, supra*.

In its comments from the bench at the conclusion of the hearing, the district court acknowledged that if Pierce had his way, he would spend equal time with Mandy and Jacob but that option is no longer feasible because of Mandy's unilateral decision to move and the fact that she does not have any interest in placing herself back in a situation where a more equal parenting time arrangement would be possible. The court also indicated that in awarding physical custody to Jacob and requesting that Pierce return to his school in Ralston, its "goal [was] to have him be back with the friends that he cared about." These comments indicate that the court considered Pierce's feelings of wanting to spend equal time with each of his parents and of missing the friends he had at school in Ralston and near Jacob's house.

Mandy's argument highlights evidence regarding Jacob's wife, which she argues leads to the conclusion that Pierce does not feel comfortable expressing his feelings at Jacob's house and that she should have received custody because Jacob does not encourage a relationship between Mandy and Pierce. Although Pierce answered questions regarding Jacob's wife, he did not indicate that he felt uncomfortable when spending time with Jacob or express a desire that he not spend time at Jacob's house.

As the fact finder, the district court had the authority to place weight on whatever evidence it found to be most credible and relevant and to draw these same inferences from Pierce's testimony should it have chosen to do so. See *Dooling v. Dooling*, 303 Neb. 494, 930 N.W.2d 481 (2019) (in child custody cases, where credible evidence is in conflict on material issue of fact, appellate court considers, and may give weight to, fact that trial judge heard and observed witnesses and accepted one version of facts rather than another). Despite the testimony related to Jacob's wife that Mandy highlights, the district court gave weight to other evidence in support of awarding custody to Jacob, and as determined above, that decision was not an abuse of discretion.

It is clear from the record that despite Mandy's broader argument to the contrary, the district court did consider Pierce's testimony in reaching its decision. And it agreed with him that the previous parenting plan had worked well and continued to be in his best interests. But for the reasons it articulated, joint physical custody was no longer feasible. We therefore reject Mandy's assigned error that the district court failed to consider Pierce's testimony.

Finally, Mandy contends that the district court erred in its modification of child support. She argues that because she should have retained physical custody of Pierce, she should not have been ordered to pay child support. Having affirmed the district court's decision to award physical custody to Jacob, we reject this argument.

In the alternative, Mandy asserts that the court's child support calculation was erroneous because it did not include an abatement for summer parenting time. We first note that the district court adopted Mandy's proposed child support calculation in its order on modification. Mandy has not directed us to any portion of the record in which she requested that the court include an abatement during summer parenting time. The court held an additional hearing after the modification hearing at which the parties discussed certain issues with the court, such as child support and summer and holiday parenting time. Mandy did not request an abatement of child support at any time throughout that discussion.

To support her argument, Mandy relies upon Neb. Ct. R. § 4-210 of the Nebraska Child Support Guidelines, which provides that if child support is not calculated under Neb. Ct. R. § 4-212, joint physical custody, an adjustment in child support may be made at the discretion of the court when visitation or parenting time substantially exceeds alternating weekends and holidays and 28 days or more in any 90-day period. The modified parenting plan here provides Mandy and Jacob with alternating weeks of parenting time during Pierce's summer recess from school which we assume results in more than 28 days of parenting time for Mandy in the summer.

However, the modified parenting plan also requires Mandy and Jacob to meet at the halfway point between Jacob's home in Gretna and Mandy's home in York to transition Pierce for parenting time, which results in additional time and expense for Jacob during the summer when they exchange Pierce more frequently. Noting that § 4-210 makes it discretionary with the court as to whether an abatement of child support should be ordered and the absence of any request in

the record for the court to so order, we cannot say that the district court abused its discretion by not allowing for an abatement of child support during the summer months.

On cross-appeal, Jacob assigns that the district court abused its discretion in failing to award him attorney fees. We find no abuse of discretion in the district court's decision.

An award of attorney fees in a paternity action is reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge. Absent such an abuse, the award will be affirmed. *Wolter v. Fortuna*, 27 Neb. App. 166, 928 N.W.2d 416 (2019).

As a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Id*. Attorney fees and costs are statutorily allowed in paternity and child support cases. *Id*. See Neb. Rev. Stat. § 43-1412(3) (Reissue 2016).

The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and general equities of the case. *Schroeder v. Schroeder*, 26 Neb. App. 227, 918 N.W.2d 323 (2018).

In our de novo review of the record, we have considered the general equities of the case as well as the other relevant factors. This case involved contested issues of custody, parenting time, and child support. Jacob was forced to incur attorney fees as a result of Mandy's decision to move to York, which resulted in her failure to comply with the existing parenting plan. Jacob was successful in his desire for legal and physical custody as well as a child support award.

However, the child support calculations attached to the order of modification establish that Mandy earns less than half of what Jacob earns every month, and Jacob is married and his wife is employed and contributes to their household income and expenses. We also note that Mandy was ordered to pay $1,254 in attorney fees to Jacob as a result of the contempt finding. Given the foregoing, we conclude that the district court did not abuse its discretion in declining to award additional attorney fees to Jacob.

## CONCLUSION

We find no abuse of discretion in the district court's decision to modify the decree and award legal and physical custody of Pierce to Jacob and order Mandy to pay child support. We additionally conclude that the district court did not abuse its discretion in declining to abate child support during the summer months and declining to award additional attorney fees to Jacob. The court's order is therefore affirmed.

AFFIRMED.