Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/05/2019 09:05 AM CDT

Kristina Michelle Dooling, appellee and
cross-appellant, v. Shawn Allen Dooling,
appellant and cross-appellee.

___ N.W.2d ___

Filed July 5, 2019.    No. S-18-191.

1.  **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2.  **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

3.  **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

4.  **Child Support: Rules of the Supreme Court.** In general, child support payments should be set according to the Nebraska Child Support Guidelines.

5.  **Divorce: Property Division.** Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.

6. ____: ____. The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.

7. **Property Division: Proof.** The burden of proof rests with the party claiming that property is nonmarital.

8. **Property Division: Appeal and Error.** As a general principle, the date upon which a marital estate is valued should be rationally related to the property composing the marital estate. The date of valuation is reviewed for an abuse of the trial court's discretion.

9. **Property Division.** The marital estate includes property accumulated and acquired during the marriage through the joint efforts of the parties.

10. **Property Division: Wages: Equity.** To the extent that employment benefits such as unused sick time, vacation time, and compensatory time have been earned during the marriage, they constitute deferred compensation benefits under Neb. Rev. Stat. § 42-366(8) (Reissue 2016) and are considered part of the marital estate subject to equitable division.

11. **Property Division.** As a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case.

12. **Divorce: Property Division: Alimony.** In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party.

13. **Divorce: Property Division.** In addition to the specific criteria listed in Neb. Rev. Stat. § 42-365 (Reissue 2016), a court should consider the income and earning capacity of each party and the general equities of the situation.

14. **Alimony.** The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate.

15. **Alimony: Appeal and Error.** In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. The ultimate criterion is one of reasonableness.

16. **Modification of Decree: Divorce: Child Custody.** If trial evidence establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement.

17. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

18. ____: ____. In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

Appeal from the District Court for Sarpy County: Stefanie A. Martinez, Judge. Affirmed in part, affirmed in part as modified, and in part reversed and remanded with directions.

Christopher Perrone, of Perrone Law, for appellant.

Kathryn D. Putnam, of Astley Putnam, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

Shawn Allen Dooling appeals from a decree of dissolution, assigning errors related to the issues of child support, division of the marital estate, and alimony. Kristina Michelle Dooling filed a cross-appeal which concerns the issues of child support, division of the marital estate, and the award of joint physical custody. We find error in the court's child support calculation and its division of certain marital assets and determine the parties' remaining arguments to be without merit. Therefore, we affirm in part, affirm in part as modified, and in part reverse and remand with directions.

## I. BACKGROUND

Shawn and Kristina were married in May 2001 and divorced in January 2018. Three children were born of the marriage. During the marriage, Shawn was employed as a police officer for the city of La Vista, Nebraska; Kristina worked part time as a paraprofessional at a children's school. When the parties

separated in July 2014, Shawn moved out of the family residence on South River Rock Drive in Papillion, Nebraska. The parties maintained a joint checking account and paid for family expenses from the account. Throughout their separation, the parties followed a shared parenting time schedule.

In July 2015, Kristina filed a complaint for dissolution of marriage in the district court for Sarpy County which requested "the temporary and permanent care, physical custody and control of the minor [children]." Shawn filed an answer and counterclaim which requested joint legal and physical custody. Pursuant to temporary orders entered in August 2015, the parties were awarded joint legal custody and Kristina was awarded "primary possession" of the children. Shawn was awarded parenting time every Wednesday and every other weekend from Friday through Monday. Shawn was ordered to pay monthly child support in the amount of $1,412, maintain all parties on health insurance, pay 72 percent of daycare if daycare was needed, and make the minimum monthly payment of $300 on the parties' Visa credit card. Kristina was awarded exclusive possession of the home and was ordered to pay the mortgage, taxes, and costs on the home, which totaled $1,642 per month. Kristina was ordered to pay the first $480 per year of uninsured health costs for the children. The court did not award temporary alimony.

The family home was sold in May 2016, and the court ordered that the $20,857.44 in proceeds be held in trust pending trial. Trial was held on December 8, 2016, and June 21 and 23, 2017. The issues tried included custody and parenting time, child support, alimony, and division of the parties' assets and debts. The court heard testimony from two La Vista employees, Kristina, and Shawn.

1. Trial

(a) Evidence of Shawn's
Employment Benefits

The city clerk of La Vista testified regarding Shawn's employment contract and benefits. According to this witness,

upon leaving employment, a city employee who has attained 10 years of service is paid for unused sick leave for the amount that exceeds 660 accumulated hours up to the maximum of 880 hours. The clerk testified that upon leaving employment, an employee is awarded 100 percent of compensatory (comp) time. The court also heard from La Vista's human resources manager, who stated that comp time is paid out at the end of every fiscal year on September 30, up to a maximum of 75 hours. She also testified that the city matches the police officers' mandatory 7-percent contribution to their pensions. Both witnesses testified that city employees are paid for their unused vacation time upon leaving employment, up to a maximum of 220 hours.

### (b) Kristina's Testimony

Kristina testified that during the marriage, she worked part time when school was in session and earned about $10 or $11 an hour. In August 2015, Kristina obtained her first full-time job where she earns $13.50 an hour. She worked 40 hours a week with no 401K and no pension. She testified the parties' balance on their Visa credit card account was $17,737.82 as of October 2015.

Before the parties purchased their house on South River Rock Drive, they owned a house on South 79th Street in La Vista. Kristina asked to be compensated for paying $6,880 to replace the air conditioner in the South 79th Street house in 2010. She claimed she paid for the air conditioner using premarital funds kept in a Canadian bank account. Kristina testified the account originally held approximately $30,000 in Canadian dollars received from a personal injury settlement when she was 16 years old. She claimed she transferred $8,000 out of the Canadian bank account to pay for the air conditioner. She produced a bank statement from February 2001 showing a Canadian bank account held by Kristina and her father contained $29,580.95 in Canadian dollars and another statement from 2015 showing these funds had been depleted. On cross-examination, Kristina admitted that Shawn purchased

a new air conditioner for the South River Rock Drive residence after the parties had separated.

Kristina acknowledged the parties received a check for $20,857.44 in proceeds from the sale of the home on South River Rock Drive. The parties received an additional check in the amount of $2,848.93 from escrow for excess real estate taxes, which they agreed to divide equally. When the home was sold, the parties originally agreed to pay their marital debt from the sale proceeds, but Kristina later claimed that she should receive the majority of the sale proceeds, reasoning she was responsible for making house payments, cleaning the home, painting interior walls, and selling the home "without a realtor." In particular, she noted that to prepare the house for closing, she spent $810 to mudjack the front porch.

Kristina testified that despite the temporary order giving Shawn parenting time every Wednesday and every other weekend, Friday through Monday, she allowed Shawn additional parenting time. At that time, Shawn was working as a detective and as a sniper on the SWAT team and held irregular hours. From approximately January to May 2016, Shawn's parenting time ranged between 5 and 11 overnight visits per month. In lieu of daycare, Shawn picked up the children and took them to school and saw them after school almost every day. Kristina requested the court award joint legal custody and a parenting plan schedule consistent with the temporary order.

### (c) Shawn's Testimony

Shawn testified that at the time of trial, he had transferred to a road patrol position and that his hourly wage decreased from $36.04 to $34.54. He asked that the parenting schedule under the temporary order be adjusted to fit his new work schedule. He testified he now works 7 days in a 14-day period, consisting of workdays on Monday, Tuesday, Friday, Saturday, and Sunday during 1 week and Wednesday and Thursday the following week. He asked to be awarded parenting time for the 7 out of 14 days that he is not working.

Shawn testified that during the marriage, Kristina did not express a desire to be repaid for premarital money spent for family purposes. Shawn stated that he knew Kristina sometimes received money from her father and that he did not know when or how much money was spent from the Canadian account. Shawn pointed out that Kristina purchased the air conditioner for the prior home in 2010. He asked that the court give him credit for making certain postseparation payments, including $7,792 on the Visa credit card and about $4,000 to pay off a loan for the new air conditioner in the most recent home.

An exhibit introduced into evidence showed that Shawn received monthly Veterans Affairs disability payments in the amount of $763.36.

## 2. DECREE

The court issued tentative written findings in August 2017 and asked Kristina's counsel to prepare a decree in conformity therewith, after which both parties filed motions for reconsideration. The court then issued supplemental findings which modified the previous findings in several respects. The trial judge retired from the bench shortly thereafter, and the case was reassigned. Kristina's trial counsel withdrew, filed an attorney lien, and was replaced with new counsel.

The new judge entered a decree of dissolution on January 8, 2018. The decree incorporated the prior judge's tentative and supplemental findings and ordered the following:

• The parties were awarded joint legal custody. Kristina was awarded "primary possession" of the children, subject to Shawn's parenting time.

• The parenting plan awarded Shawn 6 of every 14 days and 4 additional weeks of summer parenting time for a total of 172 days of custody of the children.

• Kristina was not awarded any summer parenting time other than her regular parenting time.

• Shawn was ordered to maintain health insurance for the children; the parties were to equally share the costs of the

children's uninsured health expenses; Shawn was ordered to maintain Kristina's health insurance for 6 months.
• Shawn was ordered to pay $882 in monthly child support.
• Shawn was ordered to pay monthly alimony of $500 for a period of 60 months.
• The court valued the marital assets as of August 1, 2015. The decree sometimes referred to this date as the date of separation, even though the parties separated in July 2014.
• The court awarded Kristina $7,690.80 of the house proceeds "for monies expended to make the house marketable" and evenly divided the balance of the proceeds.
• The court equally divided Shawn's retirement, valued at $108,468.41, pursuant to a qualified domestic relations order.
• The court equally divided Shawn's vacation and comp time and ordered Shawn to pay Kristina $5,754.69 within 90 days. The court did not award Kristina any of Shawn's sick time.
• The court ordered Shawn to pay the balance on the parties' Visa credit card and ordered Kristina to pay a $637.73 medical debt.
• Shawn received a tax exemption for two minor children; Kristina received a tax exemption for one minor child.

On January 17, 2018, Kristina filed a motion to alter or amend the decree in several respects. The court overruled the motion on January 30. Shawn timely appealed, and Kristina cross-appealed. We moved the appeal to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this State.

## II. ASSIGNMENTS OF ERROR

Shawn assigns, summarized and restated, that the court erred in (1) calculating Shawn's child support obligation by (a) miscalculating Shawn's income, (b) failing to include insurance premium costs, (c) not awarding Shawn credit for retirement contributions, and (d) not crediting Shawn for the correct number of days he was awarded visitation with the children; (2) awarding Kristina a larger share of the house proceeds and using the house proceeds to pay for the lien filed by Kristina's

attorney; (3) calculating and splitting Shawn's vacation time and comp time and giving Shawn only 90 days to pay Kristina her share of these assets; (4) calculating and dividing the parties' debts; and (5) awarding alimony.

On cross-appeal, Kristina assigns, restated, that the court erred in (1) ordering joint physical custody, (2) failing to award Kristina summer parenting time, (3) failing to include Shawn's disability benefits in the child support calculation, (4) failing to allocate the children's direct expenses and childcare costs, and (5) excluding Shawn's sick time from the marital estate.

## III. STANDARD OF REVIEW

[1-3] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.[1] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[2] However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.[3] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[4]

## IV. ANALYSIS

In this matter, we discuss the issues of child support, division of the marital estate, alimony, and joint physical custody,

---

[1] *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

[2] *Id.*

[3] *Id.*

[4] *Id.*

as well as a number of related concerns raised by the parties. For purposes of efficiency, we will address assignments of error raised in Shawn's appeal and Kristina's cross-appeal together where their arguments pertain to the same predominant issue. In consideration of both the appeal and cross-appeal, we find it appropriate to modify the court's child support calculation and the division of certain marital assets and debts, and we determine the remaining arguments to be without merit.

## 1. Child Support

Shawn argues that the court abused its discretion in its determination of child support. Shawn asserts that the court did not accurately determine his gross taxable income, the health insurance premium he pays for the children and himself, and his retirement contributions, and did not accurately state the number of days that the court awarded him custody of the children. We find no merit to Shawn's claim regarding his gross taxable income, but determine his other arguments regarding child support do have merit. We also find merit to Kristina's objections to the court's findings regarding Shawn's nontaxable income and its allocation of tax dependency exemptions and childcare expenses.

### (a) Gross Taxable Income

[4] In general, child support payments should be set according to the Nebraska Child Support Guidelines.[5] In the child support worksheets adopted by the court, Shawn's gross monthly taxable income was set at $6,637. Shawn argues this figure is not correct, because it reflects his wages at $36.04 per hour and he testified that in his new position, he makes $34.54 per hour. As a result, Shawn argues that his monthly income should have been set at $5,987, which he calculated by multiplying $34.54 per hour by 40 hours per week for 52 weeks per year. Kristina argues that by annualizing Shawn's income based on evidence in the record of a 5-month sample of his

---

[5] *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018).

paychecks in 2017, Shawn's monthly income should have been set at $6,643.33.

Under the child support guidelines, all income should be annualized and divided by 12.[6] Kristina's figure differs from the amount set by the court by less than 1 percent, which was calculated based on evidence in the record consisting of a 9-month sample of Shawn's paychecks in 2016. We find no abuse of discretion by the district court in utilizing this evidence to calculate Shawn's gross taxable income.

### (b) Tax-Exempt Income

We agree with the parties that the $763.36 that Shawn receives in disability benefits each month should have been included as nontaxable income for purposes of the child support calculation. Under § 4-204, total monthly income for purposes of child support is income of both parties derived from all sources. Income for the purpose of child support is not necessarily synonymous with taxable income.[7]

### (c) Health Insurance Premium

Shawn also argues that the court did not use the correct amounts for the health insurance premium that he pays for himself and the children. The child support guidelines provide that the increased cost to the parent for health insurance for the children shall be prorated between the parents. The parent paying the premium receives a credit against his or her share of the monthly support, provided that the parent requesting the credit submits proof of the cost of health insurance coverage for the children.[8] If not otherwise specified in the support order, "health insurance" includes coverage for medical, dental, orthodontic, optometric, substance abuse, and mental health treatment.[9] The court set the health insurance premium Shawn

---

[6] Neb. Ct. R. § 4-204 (rev. 2016).

[7] *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004).

[8] See Neb. Ct. R. § 4-215(A) (rev. 2011).

[9] *Id.*

pays for himself at $0 and the amount he pays for the children at $63.80. Shawn submitted evidence that his monthly premium for his own medical insurance is $63.80 and that he pays an additional $8.98 for his dental and vision insurance. Thus, the court erred in setting Shawn's health insurance costs for himself at $0 rather than at the figure supported by the record of $72.78. We also agree with Shawn that the court erred by failing to set the amount that he pays for the children's health insurance coverage at $177.80.

### (d) Retirement

Next, Shawn contends that the court erred by incorrectly determining his monthly retirement contribution. The court set Shawn's retirement contribution at $265.48. The undisputed evidence shows that Shawn pays 7 percent in mandatory retirement contributions each month. Having found that the court correctly set Shawn's gross taxable income at $6,637, based on wages he earns working as a police officer, we find that the court erred by failing to set Shawn's monthly retirement contribution at $464.59.

### (e) Days of Child Custody

Shawn's final argument on the issue of child support is that the court erred in setting the number of his annual days as a custodial parent at 151. The parenting plan incorporated into the decree awarded Shawn six overnight visits for every 14 days and 4 weeks of summer parenting time. As a result, Shawn has 28 days of child custody when he is utilizing summer parenting time and 144 days during the other 48 weeks of the year, not counting holidays, which are evenly divided. Therefore, as the parties agree, the court should have set Shawn's annual days as a custodial parent at 172 and Kristina's at 193.

### (f) Tax Exemptions

The decree awarded Shawn tax dependency exemptions for two of the children and Kristina a tax dependency exemption for one child. However, the child support calculation worksheet

awards each party equal dependency exemptions. We agree with the parties that the child support calculation worksheets should be modified to conform to the decree.

### (g) Allocation of Expenses

In her cross-appeal, Kristina argues that because the court calculated child support using worksheet 3, the court erred in failing to account for the children's direct expenses. Neb. Ct. R. § 4-212 (rev. 2011) provides that when child support is to be calculated using worksheet 3, "all reasonable and necessary direct expenditures made solely for the child(ren) such as clothing and extracurricular activities shall be allocated between the parents." We note that Neb. Rev. Stat. § 42-364.17 (Reissue 2016) also requires that a decree of dissolution "shall incorporate financial arrangements for each party's responsibility for reasonable and necessary medical, dental, and eye care, medical reimbursements, day care, extracurricular activity, education, and other extraordinary expenses of the child."

We recently held that it is sufficient if the decree and attachments made the necessary allocations on each of the required items.[10] Here, however, the record does not show that the court allocated the parties' responsibilities with respect to all of these expenses. We therefore remand the cause to the district court with directions to specifically address each party's responsibility for each of these statutorily required obligations based on the record.

To summarize our conclusions regarding child support, we find the district court erred in setting the amount of Shawn's nontaxable income, health insurance costs for himself and the children, retirement contributions, and days as a custodial parent, and in its allocation of tax dependency exemptions. We further find the court erred in not addressing each party's responsibility for the reasonable and necessary expenses of the children based on the record and the expenses set forth in

---

[10] *Leners v. Leners*, 302 Neb. 904, 925 N.W.2d 704 (2019).

§ 42-364.17. We reverse the award of child support and remand the cause to the district court for a proper calculation of child support, utilizing $763.36 for Shawn's nontaxable income, $72.78 for Shawn's health insurance, $177.80 for Shawn's payment of the children's health insurance, $464.59 for Shawn's retirement contribution, 172 for Shawn's days as a custodial parent and 193 days for Kristina, and two dependency exemptions for Shawn and one for Kristina. We also direct the court to address the parties' responsibility for the expenses listed in § 42-364.17 and rule § 4-212.

## 2. DIVISION OF MARITAL
ASSETS AND DEBTS

### (a) House Sale Proceeds

Shawn asserts that the court erred in its division of the proceeds from the parties' sale of their home. The evidence showed that in May 2016, the parties sold their home on South River Rock Drive and obtained net proceeds in the amount of $20,857.44. Kristina claimed at trial that she should receive the greater share of the proceeds and provided documents showing that she paid $810 to mudjack the front porch in preparation for closing and $6,880 to replace the air conditioner in the parties' previous house on South 79th Street. In its decree, the court awarded Kristina $7,690.80 from the $20,857.44 "for monies expended to make the house marketable" and evenly divided the balance. Based on the record, the court's award of $7,690.80 represents compensation for $810 spent on mudjacking, $6,880 spent on an air conditioner, and an additional 80 cents. Shawn does not object to reimbursing Kristina for the mudjacking costs, but objects to the remaining $6,880.80 of the $7,690.80.

[5-7] In a dissolution of marriage proceeding, "[i]f the parties fail to agree upon a property settlement . . . the court shall order an equitable division of the marital estate."[11] Under Neb.

---

[11]  Neb. Rev. Stat. § 42-366(8) (Reissue 2016).

Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process.[12] The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.[13] The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.[14] Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate.[15] Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance.[16] The burden of proof rests with the party claiming that property is nonmarital.[17]

Kristina's position at trial was that she was entitled to reimbursement for an air conditioner bought for the South 79th Street home, because she made the purchase using premarital or nonmarital funds. Based on the court's award to Kristina, the court implicitly granted Kristina's requested relief. Yet, the decree specifically stated the award was "for monies expended to make the house marketable," and Shawn persuasively argues on appeal that Kristina's purchase of the air conditioner for the South 79th Street home did not make the home on South Rock River Drive marketable. Shawn argues the award to Kristina was improper, because the court did not conduct an analysis of whether Kristina was entitled to reimbursement for any

---

[12] *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018); *Osantowski, supra* note 1.

[13] *Id.*

[14] *Id.*

[15] *Osantowski, supra* note 1.

[16] *Id.*

[17] *Fetherkile, supra* note 12; *Osantowski, supra* note 1.

premarital assets. Kristina appears to agree with this point. In her brief and at oral argument before this court, Kristina abandoned her position that she should be reimbursed for her purchase of the air conditioner, and instead attempts to justify the award using an alternate, post hoc rationalization. Kristina now argues that she is entitled to the greater share of the proceeds based on the equity that she built during the 9-month period in which she was in sole possession of the home. We are not persuaded that this result is justified based on the record. Kristina made this same argument to the district court, and the court did not accept that argument. Kristina's argument is partially based on reimbursement for real estate taxes paid during the operation of the temporary order, yet she already voluntarily split the refund for some of these payments with Shawn. The temporary order required Kristina to make equity contributions because she was awarded sole possession of the home. Kristina's compliance with the temporary order does not entitle her to the benefit of an additional $6,880.80 from the house proceeds.

Based on our de novo review of the record, we conclude that the court erred in its equitable division of the house proceeds and find that a fair and reasonable evaluation of the facts of this case requires that the division of the house proceeds be modified so that Kristina receives $11,238.72 and Shawn receives $9,618.72. We affirm this portion of the decree as modified.

Shawn also argues that the court erred by authorizing a lien in the amount of $5,176.28 filed by Kristina's trial counsel to be paid from the family home proceeds. Because the record shows that Kristina paid the lien from her share of the proceeds, we find this argument to be without merit.

### (b) Employment Benefits

#### (i) Valuation Date Reasonable

Shawn argues that the court erred in ordering him to pay Kristina $5,754.69 from his employment benefits for two

reasons. First, he claims the court erred by awarding Kristina $4,592.40 in unused vacation time and $1,162.29 in comp time, because these figures reflected the value of Shawn's benefits as of September 15, 2015. Shawn argues that the court stated it valued his benefits "at the time of separation" and that the parties separated in July 2014. Therefore, Shawn contends that the court abused its discretion in awarding Kristina any funds from vacation time or comp time, because there was no evidence regarding the value of these benefits as of July 2014.

Second, Shawn argues that the court abused its discretion in ordering him to pay Kristina the $5,754.69 within 90 days. He argues that his employment benefits are not liquid assets and that because he is already obligated to pay child support, alimony, and other debts, he will be unable to comply with the court's decree. Kristina argues in her cross-appeal that the court erred by failing to award her an equal portion of the value of Shawn's unused sick time.

[8] As a general principle, the date upon which a marital estate is valued should be rationally related to the property composing the marital estate.[18] The date of valuation is reviewed for an abuse of the trial court's discretion.[19]

As discussed in the background section, the court valued the marital assets as of August 1, 2015, but the decree at times referred to the valuation date as the date of separation, which occurred in July 2014. Even so, the record indicates the court chose August 1, 2015, as the valuation date, which reflects the month in which the court entered temporary orders.

We agree with Kristina that the evidence supports using August 1, 2015, as the valuation date, because even though the parties physically separated in July 2014, they maintained their financial lives as a married couple by using a joint checking account to pay for family expenses and did not

---

[18] *Osantowski, supra* note 1.

[19] *Id.*

separate financially until the court entered temporary orders. Based on the record, the valuation date applied by the district court was rationally related to the property composing the marital estate.

The city human resources manager testified regarding the value of Shawn's employment benefits and stated that the supporting documents were calculated on a quarterly basis. The court used the third quarter report as evidence of the value of the assets on August 1, 2015. Shawn argues that the court could have reached a more accurate figure by using the second quarter report, but that report was not offered into evidence, and there was no similar evidence offered to prove the value of the employment benefits as of July 2014. Even Shawn stated in his testimony that the valuation date should be July 2015, the month Kristina filed for divorce. We find no abuse of discretion in the court's use of August 1, 2015, as the valuation date.

### (ii) Deferred Compensation Benefits

[9] We have not previously addressed whether employee benefits such as accrued sick leave, vacation time, and comp time are considered marital property subject to equitable distribution in a dissolution action. We have long held that the marital estate includes property accumulated and acquired during the marriage through the joint efforts of the parties.[20] Section 42-366(8) states that for purposes of the division of property in a dissolution of marriage action, "[t]he court shall include as part of the marital estate . . . any pension plans, retirement plans, annuities, and other *deferred compensation benefits* owned by either party, whether vested or not vested."[21] (Emphasis supplied.) Generally, deferred

---

[20] *Tyma v. Tyma*, 263 Neb. 873, 644 N.W.2d 139 (2002).

[21] See, *Hosack v. Hosack*, 267 Neb. 934, 678 N.W.2d 746 (2004); *Longo v. Longo*, 266 Neb. 171, 663 N.W.2d 604 (2003); *Tyma, supra* note 20; *Kullbom v. Kullbom*, 209 Neb. 145, 306 N.W.2d 844 (1981) (cases discussing deferred compensation benefits).

compensation is defined as compensation which is earned in exchange for services rendered.[22] We have held that unvested employee stock options and stock retention shares qualify as "deferred compensation benefits" within the meaning of § 42-366(8).[23] Conversely, we have found that health insurance is not deferred compensation, because insurance is based upon the payment of premiums rather than the rendering of services.[24]

In *Wiech v. Wiech*,[25] the Nebraska Court of Appeals determined that unused sick, vacation, and comp time could be considered part of the marital estate subject to equitable distribution as long as the benefits were acquired during the marriage. Other jurisdictions have similarly held that employment benefits such as these earned during the marriage are considered marital property.[26]

[10] As a result, we hold that to the extent employment benefits such as unused sick time, vacation time, and comp time have been earned during the marriage, they constitute deferred compensation benefits under § 42-366(8) and are considered part of the marital estate subject to equitable division.

### (iii) Payment Within 90 Days

We turn to Shawn's argument that the court erred by ordering him to pay Kristina her share of the employment benefits within 90 days. The decree valued Kristina's share of the

---

[22] *Livingston v. Metropolitan Util. Dist.*, 269 Neb. 301, 692 N.W.2d 475 (2005). See *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982).

[23] *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998).

[24] *Christiansen v. County of Douglas*, 288 Neb. 564, 849 N.W.2d 493 (2014).

[25] *Wiech v. Wiech*, 23 Neb. App. 370, 871 N.W.2d 570 (2015).

[26] *Mann v. Mann*, 778 P.2d 590 (Alaska 1989); *In re Marriage of Moore*, 226 Cal. App. 4th 92, 171 Cal. Rptr. 3d 762 (2014); *In re Marriage of Cardona and Castro*, 316 P.3d 626 (Colo. 2014); *Grund v. Grund*, 151 Misc. 2d 852, 573 N.Y.S.2d 840 (1991); *Marriage of Williams*, 84 Wash. App. 263, 927 P.2d 679 (1996).

vacation time at $4,592.40 and her share of the comp time at $1,162.29, for a total of $5,754.69. Shawn argues that he has access to his employment benefits only upon retirement and presently lacks the funds to be able comply with the court-ordered payment.

According to the collective bargaining agreement governing Shawn's employment, Shawn is correct that he will not receive payment for accrued vacation time until he leaves his employment. As for comp time, the city human resources manager testified, and the agreement confirms, that comp time is paid out at the end of every fiscal year, September 30. However, the agreement contains an additional provision which permits an employee to request to be paid for accrued comp time at any time, and payment will be made by the next payday. The record therefore indicates that Shawn will have available to him $9,618.72 from the house proceeds and $1,162.29 from his share of the comp time to pay Kristina $5,754.69 within 90 days. We find no abuse of discretion by the district court.

### (iv) Sick Time

Kristina argues that the court erred by failing to award her half of the value of Shawn's accrued sick time. As discussed, the standard governing the division of marital property is fairness and reasonableness as determined by the facts of each case. Based on the evidence relied upon by the district court, Shawn had accrued 25.97 hours of compensable sick time, and based on this fact, the court could have awarded Kristina $467.98 for sick time.

[11] As a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case.[27] As we will next show in our analysis of the court's division of the total marital estate, the $467.98 that Kristina

---

[27] *Osantowski, supra* note 1.

is requesting represents a small portion of the marital estate and declining to award Kristina this amount does not alter the fairness or reasonableness of the division of the total marital estate. We cannot conclude that the court abused its discretion in declining to award Kristina her share of Shawn's unused sick time.

### (v) Division of Total Marital Estate

Shawn objects to the court's division of the parties' debts and assets. Under the decree, Shawn was ordered to pay the parties' credit card debt of $17,737.82 and Kristina was ordered to pay $637.73 for the children's unpaid medical costs. Shawn argues that the court failed to list as a debt in the decree a credit union loan. We agree that Shawn produced evidence that he took out this loan to purchase an air conditioner for the home on South River Rock Drive and that this loan should have been listed as a marital debt. The evidence indicates that as of August 1, 2015, the balance of the loan was $3,545.37. We find that Shawn is responsible for paying this amount. Having included this loan as part of the marital estate, the following table represents the division of the parties' total marital estate.

| Assets | Amount | Shawn | Kristina |
|---|---|---|---|
| House Proceeds | $ 20,857.44 | $ 9,618.72 | $11,238.72 |
| Shawn's Retirement | 108,468.41 | 54,234.21 | 54,234.20 |
| Shawn's Vacation/ | | | |
| Comp Time | 11,509.37 | 5,754.69 | 5,754.69 |
| TOTAL | $140,835.22 | $69,607.62 | $71,227.61 |
| **Debts** | | | |
| Credit Card | $ 17,737.82 | $17,737.82 | $ 0.00 |
| Medical Bills | 637.73 | 0.00 | 637.73 |
| Loan | 3,545.37 | 3,545.37 | 0.00 |
| TOTAL | $ 21,920.92 | $21,283.19 | $ 637.73 |
| **Marital Estate** | $118,914.30 | $48,324.43 | $70,589.88 |

As noted, a district court generally has discretion to award each spouse between one-third and one-half of the marital estate. Having factored in our modifications to the district

court's division of the marital estate, the calculations above show that Shawn has been awarded approximately 41 percent of the marital estate. Following our de novo review of the record, we find no abuse of discretion in the district court's division of the marital estate and affirm this portion of the decree as modified.

### 3. Alimony

[12,13] Shawn objects to the alimony award of $500 per month for 60 months that he was ordered to pay Kristina. In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party.[28] In addition, a court should consider the income and earning capacity of each party and the general equities of the situation.[29] Alimony is not a tool to equalize the parties' income, but a disparity of income or potential income might partially justify an alimony award.[30]

The parties were married in May 2001, and Kristina filed for divorce in July 2015. The evidence indicates a significant disparity in the earning capacity of the parties. Kristina testified that she has no formal educational or work background. During the marriage, Kristina was a stay-at-home mother and she began working part time once the children entered elementary school. She obtained her first full-time job in August 2015 and earned $13.50 an hour, with no opportunities for overtime and no 401K or pension. By comparison, Shawn is a career police officer who has earned approximately $80,000 per year, with a pension and retirement benefits and opportunities to

---

[28] *Wiedel v. Wiedel*, 300 Neb. 13, 911 N.W.2d 582 (2018); § 42-365.

[29] *Wiedel, supra* note 28.

[30] *Id.*

be compensated for unused sick, vacation, and comp time. Additionally, the record indicates that without alimony, Kristina is unable to pay her monthly expenses.

[14,15] The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate.[31] In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result.[32] The ultimate criterion is one of reasonableness.[33] An appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record.[34] As to the award of alimony here, our de novo review shows that the district court did not abuse its discretion.

## 4. Custody

Kristina claims that the district court abused its discretion by awarding "de facto joint physical custody" based on her assertions that neither party requested joint physical custody, that the district court failed to specifically find that joint physical custody is in the best interests of the minor children, and that she was denied due process when the court awarded joint physical custody following trial.[35]

In an action for dissolution of marriage involving the custody of minor children, the court is required to make a determination of legal and physical custody based upon the children's best interests.[36] Such determinations shall be made by incorporation into the decree of a parenting plan,

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] See *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007).

[36] Neb. Rev. Stat. § 42-364(1)(b) (Cum. Supp. 2018).

developed either by the parties as approved by the court or by the court after an evidentiary hearing.[37] The minor children may be placed with both parents on a joint physical custody basis where (1) both parents agree or (2) the court specifically finds that joint physical custody is in the best interests of the minor children.[38]

Nebraska's Parenting Act[39] defines joint physical custody as "mutual authority and responsibility of the parents regarding the child's place of residence and the exertion of continuous blocks of parenting time by both parents over the child for significant periods of time."[40] Here, the court awarded Kristina "primary possession" of the children and set forth the parenting time in a parenting plan. While "primary possession" is not a statutorily defined term, we have indicated in our opinions that the label that a court uses is not controlling and that the classification of a custody arrangement is ultimately dictated by parenting time.[41]

[16] The parenting plan here awarded Shawn parenting time with the children every Tuesday and Thursday, every other Friday and Saturday, equally divided holidays, and 4 weeks of summer parenting time consisting of two 2-week periods. Under this parenting schedule, Kristina has custody of the children 193 days and Shawn has custody of the children 172 days. We find that this custody arrangement falls within the statutory definition of joint physical custody, as distinguished from sole physical custody with liberal parenting time.[42] If

---

[37] See *id.*

[38] § 42-364(3).

[39] Neb. Rev. Stat. §§ 43-2920 to 43-2943 (Reissue 2016).

[40] § 43-2922(12).

[41] See, e.g., *Leners, supra* note 10; *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018).

[42] See, *Heesacker v. Heesacker*, 262 Neb. 179, 629 N.W.2d 558 (2001); *Elsome v. Elsome*, 257 Neb. 889, 601 N.W.2d 537 (1999); *Hill v. Hill*, 20 Neb. App. 528, 827 N.W.2d 304 (2013).

trial evidence establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement.[43]

We also determine that Kristina is incorrect in stating that neither party requested joint physical custody and that the court did not find that the court-developed custody arrangement was in the best interests of the children. Shawn filed an answer and counterclaim which requested joint physical custody, and both Shawn and Kristina were questioned at trial regarding Shawn's request for a "50/50" schedule. Because Kristina had notice that Shawn was seeking joint physical custody, and because she had an opportunity to present evidence in opposition to Shawn's proposed custody arrangement, we conclude Kristina was afforded procedural due process.

We further note arguments that Kristina made before the trial court which undermine her contention that she was denied due process. Kristina's motion for reconsideration of the court's tentative findings requested that the court use the joint physical custody worksheet when calculating child support. In her motion for reconsideration following the entry of the decree of dissolution, Kristina did not object to the use of the joint physical custody worksheet, but, rather, requested additional clothing and extracurricular activity expenses premised on the court's use of the joint physical custody worksheet.

The record also indicates that the court made the necessary statutory findings for an award of joint physical custody under § 42-364(3). The court awarded "primary possession" of the children to Kristina, subject to the parenting time as set forth in the parenting plan incorporated into the decree, which the court found was in the best interests of the minor children. In addition, the decree incorporated the prior judge's tentative and supplemental findings, which found that it is in the best interests of the minor children that "primary possession" be awarded to Kristina, subject to the parenting plan.

---

[43] *Becher, supra* note 41; *Elsome, supra* note 42.

Kristina's cross-appeal includes objections to the parenting time within the parenting plan. Kristina argues the award of joint physical custody is contrary to the court's determination that she be granted "primary possession" of the children. Kristina assigned error to the court's award of 4 weeks of summer parenting time to Shawn and argues the parenting plan should have remained consistent with the temporary order which in effect would have awarded Kristina sole physical custody with liberal parenting time to Shawn of 130 days.

[17,18] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.[44] In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[45]

The record supports the court's determination that the award of joint physical custody pursuant to the court-developed parenting plan was in the children's best interests. It was undisputed that each parent was fit and proper and that the best interests of the children would be served with the ongoing involvement of both Shawn and Kristina. There was no evidence of significant communication difficulties between the parties, and there was evidence that the parties have been able to effectively communicate regarding matters affecting the children. Kristina argues that Shawn had never had the children 50 percent of the time since the parties separated in July 2014. However, the evidence showed that in 2016, the parties agreed that Shawn could exercise more parenting time than allowed under the temporary order. There was evidence that Shawn's house is located near the children's school, that

---

[44] *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

[45] *Id.*

Kristina drops the children off at Shawn's house, and that Shawn takes the children to school and sees them after school almost every day during the school year. This included days in which Kristina had the children.

The court awarded Kristina the majority of the parenting time in the form of eight overnight visits for every 14 days, and it balanced the children's opportunity to spend time with Shawn by awarding Shawn two extended periods of parenting time over the summer. Kristina argues that the parties should have been awarded the same amount of extended parenting time and that absent extended parenting time, the most that she will be able to travel with the children to visit her family in Canada is 4 days. We conclude it was within the district court's discretion to conclude that declining to award Kristina extended parenting time would not greatly impact the best interests of the children. We find no abuse of discretion in the district court's determination that joint physical custody and the parenting plan incorporated into the decree are in the best interests of the children.

## V. CONCLUSION

The district court did not err in its award of alimony and joint physical custody and in developing a parenting plan based upon the best interests of the children. However, the court erred in its calculation of child support and in its division of the marital estate. We therefore affirm in part, affirm the court's division of the marital estate as modified, and in part reverse and remand with directions to recalculate the child support as discussed above.

AFFIRMED IN PART, AFFIRMED IN PART
AS MODIFIED, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.