IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HOLEN V. HOLEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CLAIRE C. HOLEN, APPELLEE AND CROSS-APPELLANT,

V.

ERIK T. HOLEN, APPELLANT AND CROSS-APPELLEE.

Filed December 31, 2019.    No. A-19-034.

Appeal from the District Court for Phelps County: TERRI S. HARDER, Judge. Affirmed.

Kent A. Schroeder, of Ross, Schroeder & George, L.L.C., for appellant.

Jane F. Langan Mach and Alex M. Lierz, of Rembolt Ludtke, L.L.P., for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

We first addressed this divorce case in *Holen v. Holen*, No. A-16-1201, 2017 WL 6334153 (Neb. App. Dec. 12, 2017) (selected for posting to court website) (*Holen I*). In that opinion, we determined that the district court abused its discretion when it awarded an option to purchase certain farmland solely to Erik T. Holen, and we concluded that the option should have been awarded to both Erik and Claire C. Holen. As a result, we also reversed a deferred land tax and a Dakota MAC debt associated with the option, both of which had been allocated solely to Erik. We remanded the matter back to the district court with directions to award the option to purchase to both parties and to reconfigure the final division of marital assets, liabilities, and equalization.

On remand, the district court determined the marital portion of the Dakota MAC debt and allocated it to the parties in a proportion which did not require an equalization judgment between the parties. Erik now challenges the valuation date used by the district court to determine the

- 1 -

marital portion of the Dakota MAC debt. Claire cross-appeals, challenging the district court's decision to not hold Erik in contempt for violating a January 2016 antihypothecation order as it related to the option to purchase. We affirm all matters.

## II. BACKGROUND

### 1. DIVORCE ACTION

The Phelps County District Court dissolved the marriage between Claire and Erik. A decree, as amended, was entered from which both parties appealed and assigned numerous errors, including errors related to property, specifically an option to purchase farmland owned by Erik's grandmother. On appeal, this court reversed the portion of the decree which awarded the option to purchase to Erik (valued by the district court at $1,023,061) and which gave him credit for a $283,558 deferred land tax associated with the option. See *Holen I*. This court then stated:

> Since we are reversing the allocation of the option to be awarded to both parties, we must also reverse the allocation of the debt associated with it. And in doing so, the parties should not be prohibited from raising any challenges to the $504,929 figure used by the district court for the reasons discussed above [i.e. that there was no particular reason for either party to challenge the amount of the debt in the original appeal]. Additionally, the equalization judgment in the decree must be reversed. Therefore, we reverse and remand the following matters for the district court's consideration and determination: (1) the amount of the marital portion of the Dakota MAC debt to be included in the final division of assets and liabilities; whether it should be the balance of the debt as of the September 2014 refinancing ($352,776.11) or the balance at the time of the marital equalization date ($504,929); (2) should the marital portion of the Dakota MAC debt remain allocated solely to Erik or should it be allocated between the parties to eliminate an equalization payout by either party; and (3) is an equalization payment necessary under the circumstances of the case . . . .
>
> The district court's consideration of these matters should be based on evidence contained in the trial record, however, it is certainly in the court's discretion to decide whether it would be helpful to schedule a hearing or require briefing for purposes of arguments and proposals from the parties.

*Holen I* at *10. Claire filed a petition for further review of *Holen I* with the Nebraska Supreme Court; that petition was denied on March 14, 2018.

In its "Order on Remand (Decree of Dissolution)" filed on August 16, 2018, the district court noted that it had a telephonic status conference with the parties' counsel on July 19, and that "[t]he consensus of the parties was that argument would be made on that date and no further hearing was necessary." "Each party made argument to the Court," and "[t]he matter was deemed submitted on the issues that were remanded."

Per this court's instructions, the district court adjusted the parties' property division to reflect that the land option was awarded to both parties equally and that Erik was no longer receiving credit for the deferred land tax associated with the option. The district court then determined the marital portion of the Dakota MAC debt was $352,776 (balance at time of September 2014 refinancing agreement), rather than $504,929 (balance as of December 31, 2014,

marital equalization date). The district court then allocated the $352,776 "between the parties in a proportion which does not require an equalization judgment between the parties" ($219,681 was allocated to Erik and $133,095 was allocated to Claire). The final "reconciliation reflecte[d] a 50/50 division of the marital estate," with each party receiving a net marital estate of negative $22,163.

Erik filed a motion to "amend or alter order on remand," and Claire filed a "motion for new trial or to alter or amend judgment." After a hearing, both motions were overruled on December 17, 2018.

## 2. CONTEMPT ACTION

On July 11, 2018, after this court's remand in *Holen I*, Claire filed a "verified motion for order to show cause (damages and sanctions)" asking the district court to order Erik to appear and show cause why he should not be held in contempt of court for failing to follow the antihypothecation order entered by the court on January 21, 2016 (related to Erik's alleged actions to jeopardize the parties' interests in the option to purchase), and the Decree of Dissolution entered by the court on November 4, 2016 (related to Erik's failure to execute a quitclaim deed so that Claire could refinance the mortgage on the residence awarded to her in the divorce). The district court entered an order to show cause ordering Erik to appear at an October 2018 hearing to show cause why he should not be held in contempt for failing to follow the January 2016 antihypothecation order and the November 2016 Decree.

After a hearing in October 2018, the district court filed its "Order re: Orders to Show Cause" on December 17. In its order, the district court stated, "Based on the record and the decision of the court of appeals [in *Holen I*], the Court does not conclude that [Erik's] conduct rose to the level of contempt" with regard to the antihypothecation order and therefore Claire's order to show cause was overruled. The court also found that Erik was not in contempt of the decree for failing to sign the quitclaim deed.

## 3. APPEAL

Erik appeals, and Claire cross-appeals, the district court's orders.

## III. ASSIGNMENTS OF ERROR

On appeal, Erik claims, summarized and restated, that the district court abused its discretion when it chose an alternate valuation date for the Dakota MAC debt and found that $152,152.89 of the Dakota MAC debt was a nonmarital debt.

Erik also attempts to challenge findings in this court's previous memorandum opinion in *Holen I*. However, Erik did not file a motion for rehearing or a petition for further review, and thus his challenges to this court's previous findings are untimely. See, Neb. Ct. R. App. P. § 2-113 (rev. 2012) (motion for rehearing and brief in support must be filed within 10 days after release of opinion of court or entry of order of court disposing of appeal); Neb. Ct. R. App. P. § 2-102(F)(1) (rev. 2012) (petition for further review and memorandum brief in support must be filed within 30 days after release of opinion of Court of Appeals or entry of order of Court of Appeals finally disposing of appeal, whichever occurs later; order of Court of Appeals finally disposing of appeal includes order on motion for rehearing or motion for attorney fees).

On cross-appeal, Claire assigns that the district court abused its discretion when it failed to find Erik in contempt for violating the January 2016 antihypothecation order, and thus the district court also abused its discretion in failing to award her damages or sanctions, and attorney fees.

## IV. STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Dooling v. Dooling*, 303 Neb. 494, 930 N.W.2d 481 (2019). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id*. In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id*. However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*. A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## V. ANALYSIS

### 1. ERIK'S APPEAL

Erik claims the district court abused its discretion when it determined the marital portion of the Dakota MAC debt was $352,776 (balance at time of September 2014 refinancing agreement), rather than $504,929 (balance as of December 31, 2014, marital equalization date).

#### (a) Factual Background

Although the facts of this case were set forth in detail in *Holen I*, we briefly recount the relevant facts here. In April 2010, Erik and Claire entered into a lease agreement with an option to purchase (Agreement) with Erik's grandmother regarding farm land owned by her; the Agreement was amended in February 2013. Erik and Claire had some farm debt at Dakota MAC/Agri-Access secured by the grandmother's land, and in September 2014, that debt was refinanced; the refinance occurred after Erik had moved out of the marital home in August and before the divorce proceedings were filed in October.

To refinance, the parties and Erik's grandmother applied to Dakota MAC for a loan of $750,000; the loan was secured by a Deed of Trust issued by Erik's grandmother to the bank for her land. The September refinance summary shows $352,776.11 in total debt, including a payoff for the first mortgage to Agri-Access of $266,597.43, other expenses paid (e.g., credit card, fertilizer, irrigation equipment), and expenses associated with the refinance. The refinance was a line of credit for $750,000, so almost $400,000 remained available in the line of credit after paying off the first mortgage and other noted expenses.

During the divorce proceedings, Claire filed a motion asking the court to determine the valuation date of the marital estate. In an order filed in March 2016, the district court determined the valuation date would be December 31, 2014.

At the divorce trial, Erik agreed the balance of the Dakota MAC debt by December 31, 2014, was approximately $504,000. Erik testified he was no longer living in the marital home at

the time of the September 2014 refinancing, and it was "very possible" he had borrowed another $150,000 as of December 31. When asked what he did with $150,000 in less than 3 months, he responded, "The loan that was near its max, the cost of farming, with the farming, there were bills payable. I had invoices paid." He added, "Farming is not cheap." Erik said he used this line of credit to pay farming expenses (harvesting costs, fertilizer bills, "machinery hire"), attorney fees, and "living" expenses, including "supporting the family" and writing "Claire many checks before the end of the year."

### (b) District Court's Decision on Remand

The district court determined the marital portion of the Dakota MAC debt was $352,776 (balance at time of September 2014 refinancing agreement), rather than $504,929 (balance as of December 31, 2014, marital equalization date).

### (c) Was There Abuse of Discretion?

Erik contends the district court abused its discretion in valuing the Dakota MAC debt as of the date of the September 2014 refinancing agreement rather than the December 31 valuation date for the marital estate, and thus finding the difference of just over $150,000 was a nonmarital debt attributable separately to Erik.

Marital debt includes only those obligations incurred during the marriage for the joint benefit of the parties. *Mathews v. Mathews*, 267 Neb. 604, 676 N.W.2d 42 (2004) (finding loan taken out after separation was not marital debt). See, also, *McGuire v. McGuire*, 11 Neb. App. 433, 652 N.W.2d 293 (2002) (marital debt is one incurred during marriage and before date of separation by either spouse or both spouses for joint benefit of parties). In this case, Erik moved out of the marital home in August 2014, the parties refinanced their existing debt in September, and the divorce proceedings were filed in October. The balance of the Dakota MAC debt at the time of the September refinancing agreement was $352,776, and this was clearly a marital debt. However, Erik borrowed an additional $152,153 from the Dakota MAC line of credit between the time of the September refinancing agreement and December 31, during which time the parties were separated. Under the circumstances of this case, the district court did not abuse its discretion in determining that the $152,153 was Erik's nonmarital debt.

Erik argues, "Because the trial court's reconsideration of the merits of the case was limited to the trial record, an evidentiary hearing was precluded from occurring"; "[t]hus, [he] was unable to demonstrate to the trial court that multiple advances totaling $152,152.89, between September 1, 2014 and December 31, 2014, from Dakota [MAC] were used for farming expenses, living expenses and writing 'Claire many checks before the end of the year.'" Brief for appellant at 10. However, Erik did testify during the divorce trial about what he used the funds for, as set forth in the background section above. Erik could have, but did not, present further evidence (e.g., cancelled checks, receipts, etc.) during the trial, even though the $150,000 in additional funds drawn on the Dakota MAC line of credit were clearly at issue. Furthermore, funds borrowed by Erik for his farming and living expenses postseparation would not constitute marital debt. See *Mathews v. Mathews, supra*.

Additionally, Erik argues that if September 2014 was going to be the valuation date for the Dakota MAC debt, then that same valuation date should have been used for a Home Federal

checking account because he claims he deposited the Dakota MAC advances in the Home Federal Account. However, Erik could have, but did not, present testimony or other evidence (like bank records) at trial regarding deposits made into the Home Federal Account, even though the $150,000 in additional funds drawn on the Dakota MAC line of credit were clearly at issue.

### 2. CLAIRE'S CROSS-APPEAL

On cross-appeal, Claire assigns that the district court abused its discretion when it failed to find Erik in contempt for violating the January 2016 antihypothecation order, and thus the district court also abused its discretion in failing to award her damages or sanctions, and attorney fees.

Initially we note that Claire's cross-appeal does not strictly comply with Neb. Ct. R. App. P. § 2-109(D) (rev. 2014) because the cross-appeal section of her brief fails to set forth a separate title page and table of contents (although the initial table of contents includes the cross-appeal sections). See *Krejci v. Krejci*, 304 Neb. 302, 934 N.W.2d 179 (2019) (declining to consider merits of cross-appeal section of appellee brief because it failed to set forth separate title page and table of contents as required by § 2-109). We do not read *Krejci v. Krejci, supra*, to mandate disregarding a cross-appeal when the format of the appellee's brief does not strictly comply with § 2-109(D); rather, in that case, the Supreme Court exercised its discretion to do so. Appellate courts have exercised discretion in this area for some time. See, e.g., *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999) (referring to cases in which appellees failed to strictly comply with brief requirements for cross-appeals but whose arguments were nevertheless considered). In this case, given the proper identification of the cross-appeal on the cover of Claire's brief and the separate section for a cross-appeal indicated in the initial table of contents and separate heading within the brief itself, we exercise our discretion to consider the arguments raised by Claire. However, as we explain below, Claire's assigned error related to the district court failing to find Erik in contempt for violating the January 2016 antihypothecation order fails since that order was issued as a temporary order, and thus became moot when the divorce decree was entered on November 4, 2016.

During the initial divorce proceedings, Claire filed a motion for an antihypothecation order in December 2015 pursuant to Neb. Rev. Stat. § 42-357 (Reissue 2016). In a January 2016 journal entry, the district court ruled on Claire's motion and ordered, in relevant part, that Erik

> is hereby restrained from incurring any debt, transferring, encumbering, hypothecating, concealing or in any way disposing or harming any real or personal property or assets owned by either party or their businesses . . . except in the ordinary course of business, for the necessaries of life, or by agreement of the parties. [*Erik*] *shall comply with all pending leases and take such actions as may be necessary to preserve the parties' interest therein.*

(Emphasis supplied.) The divorce trial was held in September 2016, at which time evidence was presented that 6 weeks prior to trial, the parties had received a "Notice to Terminate Tenancy and Option" from Erik's grandmother giving them "formal notice" their lease would terminate in February 2017 and that the option to purchase was unenforceable. Erik's involvement in and/or influence over his grandmother's decision to terminate the lease and option to purchase was an issue during the divorce trial, but not pursuant to a contempt proceeding. In its decree filed on November 4, 2016, the district court stated its belief that the termination of the lease/option was a

"sham" and was the result of Erik violating the nonhypothecation order. Accordingly, the court awarded the lease/option (a marital asset) to Erik at a value of over $1 million. The district court also allocated solely to Erik the associated Dakota MAC debt, and ultimately ordered him to pay a $160,580 property equalization to Claire.

At no time prior to the district court's decree did Claire seek to have Erik held in contempt for violating the January 2016 antihypothecation order. She waited until after this court's previous memorandum opinion on appeal of the decree, *Holen I*, wherein we found that the option to purchase was a marital asset that should be awarded to both parties equally because the parties had tried and failed twice during the marriage to obtain the necessary financing to exercise the option. We also found there was no evidence that the parties attempted to exercise their option to purchase after they refinanced their debt and obtained a line of credit in September 2014. And there was no evidence that the parties, either jointly or individually could have obtained the financing to exercise the option. Our opinion resulted in a reallocation of the lease/option asset and associated debt in Erik's general favor. Claire filed a petition for further review of *Holen I* with the Nebraska Supreme Court; that petition was denied on March 14, 2018.

Claire subsequently filed a contempt action in July 2018, in part related to Erik's alleged violation of the January 2016 antihypothecation order, alleging that certain actions by Erik prior to the divorce trial jeopardized the parties' interests in the option. The district court entered an order to show cause ordering Erik to appear at an October 2018 hearing to, in part, show cause why he should not be held in contempt for failing to follow the January 2016 antihypothecation order. Prior to the October 2018 contempt hearing, the district court filed its "Order on Remand (Decree of Dissolution)" in August that ultimately left Claire with a net marital estate of negative $22,163 (compared to the $160,580 property equalization payment she was to receive under the original decree). At the October contempt hearing, Claire acknowledged that she was seeking damages in an amount equal to the difference between what she was to receive under the decree and what was ordered on remand.

Although the district court ultimately declined to find Erik in contempt regarding the antihypothecation order, we conclude the issue was already moot. The January 2016 antihypothecation order was a temporary order and issues pertaining to it became moot when the decree was entered on November 4, 2016. See *Balfany v. Balfany*, 239 Neb. 391, 476 N.W.2d 681 (1991) (in marital dissolution proceeding, temporary restraining order prohibiting transactions involving marital assets or property in which either spouse has interest maintains status quo between parties pending final resolution of property questions and disposition of respective property interests). See, also, *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004) (issue of ex parte temporary custody order only relevant from time it was ordered until it was replaced by order determining permanent custody; therefore, issues pertaining to temporary order were moot and did not need to be addressed on appeal). As Claire's attorney acknowledged at the October 2018 contempt hearing, the termination letter was sent by Erik's grandmother 6 weeks prior to the divorce trial, but no contempt action was filed prior to trial. Counsel stated, "The [district] [c]ourt . . . after our [divorce] trial made a fining [sic] that the lease termination was a sham. The Court had not been asked to determine whether or not [Erik] had violated the anti-hypothecation order and whether damages or sanctions were appropriate as a result of that." However, any contempt action regarding the January 2016 antihypothecation order

needed to be raised prior to the November 4 decree, but was not. A temporary order is only effective until replaced by a permanent order. See, *State on behalf of Pathammavong v. Pathammavong, supra*; *Balfany v. Balfany, supra*.

Accordingly, we affirm the decision of the district court to not hold Erik in contempt, although we do so for different reasons. *Doe v. Board of Regents*, 283 Neb. 303, 809 N.W.2d 263 (2012) (appellate court will affirm lower court's ruling that reaches correct result, although based on different reasoning). Because Claire's claims regarding damages, sanctions, and attorney fees were premised on Erik being in contempt of court, they do not warrant further discussion.

## VI. CONCLUSION

For the reasons stated above, we affirm the decisions of the district court.

AFFIRMED.