IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


EICKE V. EICKE


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


NIKKI EICKE, APPELLEE,

V.

KODY EICKE, APPELLANT, AND WILLARD COX, APPELLEE.


Filed March 30, 2021.    No. A-20-081.


Appeal from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Affirmed in part as modified, and in part reversed and remanded.

Leta F. Fornoff and Melissa Lang Schutt, of Fornoff & Schutt Law Office, for appellant.

Michael S. Kennedy, of Kennedy Law Firm, P.C., L.L.O., for appellee.


BISHOP, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

INTRODUCTION

Kody Eicke appeals from a decree of dissolution entered by the district court for Douglas County which decree dissolved his marriage to Nikki Eicke, awarded sole legal and physical custody of their three children to Nikki, and ordered Kody to pay $1,355 per month in child support. Kody alleges error with respect to the court's award of custody to Nikki, the terms of the parenting plan, its child support calculation, its order requiring Nikki to provide health insurance coverage for the children and not properly calculating what credit should be accorded to her, its order requiring him to pay 50 percent of unreimbursed health care expenses without Nikki paying the first $480 per child per year, and its order requiring Kody to pay 50 percent of all child care, education, extracurricular, and extraordinary expenses. Upon our de novo review of the record, we find that the district court erred in calculating Kody's child support obligation, in ordering Kody to pay 50 percent of all education, extracurricular, and extraordinary expenses, and in ordering

- 1 -

Kody to pay 50 percent of all unreimbursed health care expenses for the children without requiring Nikki to pay the first $250 per child per year. We remand the matter for a new child support calculation and to modify the decree with respect to nonreimbursed health care costs for the children and its order requiring Kody to pay 50 percent of all education, extracurricular, and extraordinary expenses. We affirm the district court's order in all other respects.

BACKGROUND

Nikki and Kody were married in December 2016 but had been involved in a longer relationship. Three children were born from their relationship: the parties' oldest son was born in 2003 and the two younger children were born in 2013 and 2015, respectively. Nikki has a son from a prior marriage who was 18 years old at the time of trial. The parties separated in February 2019. Trial occurred on November 13, 2019. At that time Nikki was pregnant with her fifth child and was due to give birth in March 2020. The father of this child was Nikki's current significant other, Willard Cox. Nikki currently resides with Cox along with the three children she shares with Kody.

On April 22, 2019, Nikki filed a complaint for dissolution of marriage. In the complaint, she specifically requested that the marriage be dissolved, that the marital assets and debts be equitably divided, that she be awarded sole legal and physical custody of the parties' children, and that she be awarded child support. On May 24, Kody filed an answer and counterclaim. Kody specifically requested that joint legal and physical custody be awarded.

Both parties requested temporary orders during the pendency of the dissolution proceedings. The court entered a temporary order on July 15, 2019, awarding the parties joint legal and physical custody where Kody would receive parenting time Monday through Friday from 6 a.m. until 3 p.m. and alternating weekends. The temporary order also directed Kody to sell the marital home and to allow Nikki access to the home to retrieve her personal property. The court entered another temporary order on September 16, 2019, changing Kody's parenting time to include every weekend and every Wednesday evening.

At trial, the evidence presented by both parties focused primarily on custody of the parties' children, the division of marital assets and debt, and the proper amount of child support to be paid by Kody. In this appeal, neither party challenges the district's court decisions concerning the division of property. As such, our recitation of the evidence presented at the trial focuses only on that evidence relating to custody and child support.

Nikki sought sole legal and physical custody. Kody sought joint legal custody for all three children. However, he sought sole physical custody of the parties' oldest son. For the two younger children, he proposed joint physical custody where the parties would follow an alternating week-on, week-off schedule.

The parties' oldest son, who was 15 years old at the time of trial, testified in chambers without the parties present. It appears from our record that the parties agreed that his specific testimony would not be shared with the parties. As such, we will not recount it in detail, but we will consider it in our review. During his testimony, Kody conceded that he does not have a good relationship with the parties' oldest son. However, Kody believed that he is able to connect with the parties' oldest son better than anybody else can. Kody explained that their son was diagnosed with depression which Kody also has.

Nikki testified that Kody is "abusive" to the children. She explained that Kody routinely calls the children "stupid," a phrase which, according to her, has been repeated by the younger children. The parties' daughter suffered injuries while being in Kody's custody. In one incident, the daughter hurt herself on a trampoline resulting in a gash on her head. Nikki testified to another incident where their daughter ran into a saw and had a cut on her face. She conceded on cross-examination that she did not investigate these incidents, take their daughter to the doctor, nor report these incidents to the authorities. Nikki asserted and Kody conceded that he had used physical discipline including hitting the children in the back of the head in the past. He explained he did so because that is "how [he] was raised[,]" but that he has been attempting to change his parenting style which has helped his relationship with his oldest son. Kody also conceded using profanity on a routine basis toward the children including calling them profane names. Nikki testified that she disciplines the children by using time-outs and taking things away from them. However, Nikki also testified that she does not believe that parents "should have to make somebody do something they don't want to do." For example, she testified that when their oldest son did not want to see Kody during Kody's parenting time under the temporary order, there were times she did not require him to see Kody.

The oldest son and Nikki both testified that Kody's house is very messy. According to Nikki, while she and Kody were married, Kody did not clean their home. She moved out of the home in February 2019. Upon being given access to the home in May and June 2019, she took pictures of the home's interior. The photos showed that there were moldy bowls and dirty dishes in the kitchen and trash scattered about the house. However, she conceded on cross-examination, that when she moved out of their home, she left both her oldest son and the parties' oldest son with Kody. Nikki currently resides with Cox in a two-bedroom apartment. She testified that the apartment is clean.

The parties' oldest son testified that when he is at Kody's house, he has to share a room with his brother. However, when he is at Cox's apartment, he generally sleeps on the couch in the living room. Nikki explained in her testimony that at Cox's apartment, she shares a bedroom with Cox and the two boys share a bedroom. The parties' daughter sleeps on the couch or on a toddler bed. She also testified that sometimes their daughter chooses to sleep on the floor. She testified that they are currently looking for a larger home but had not found one.

The evidence indicated that the oldest son has had at least 15 absences from school from August 2019 to November 2019. The testimony of the oldest son and Nikki indicates that these absences occurred either because he was sick or because he was attending doctor's appointments. Due to these absences, it was unclear whether he would receive credit for his schoolwork for the year. When the oldest son is sick, he vomits five or six times per day and the sickness lasts for three to four days at a time. Shortly before trial he underwent testing including a colonoscopy, endoscopy, or an ultrasound to determine what was causing his symptoms.

The oldest son has been diagnosed with depression and was prescribed antidepressants. Kody believes that the oldest son is happier at home when he takes his antidepressants. But he has not recently seen his son take his antidepressants. Nikki testified on rebuttal that a pediatrician recommended that the oldest son cease taking antidepressants because the pediatrician believed

the antidepressants were making him sick. Kody has not talked with Nikki about their oldest son's antidepressants because "everything turns into an argument" between them.

Nikki agreed that communication between her and Kody has been difficult since they separated. She explained that when she has attempted to call Kody, he does not answer the phone; nor does he respond to text messages that she sends him. She testified that she has had difficulty communicating with Kody about scheduling medical appointments. According to her, Kody would not respond to messages or phone calls about these appointments. She conceded on cross-examination that she did not give Kody advance notice of the most recent medical procedures involving their oldest son.

Nikki testified that she was seeking sole legal custody because she believes that she can make the best decisions for the children. She explained that throughout the relationship, she was the primary caregiver to the children. She took the children to all their doctors' and dentists' appointments and always attended parent-teacher conferences. Kody did not make any of the major medical decisions for the children; however, he explained that Nikki took the children to medical appointments during their marriage only because the appointments were made during times when Kody was working. Kody further testified that he has not been notified by Nikki of any doctors' or dentists' appointments since the parties' separation. For instance, Kody testified that he did not know that Nikki's oldest son was being treated for a mental health condition until he received an e-mail from a medical provider. He also testified that he did not know about the oldest son's absences from school until the school notified him. He also learned from the school that their younger son did not complete his physical prior to enrolling in kindergarten.

In terms of their routines, Nikki testified that, currently, she works at a distribution center, Monday through Friday from 6:30 a.m. until 3 p.m. As a result of Nikki's work schedule, Cox takes the older children to school and takes the parties' daughter to Nikki's mother's house for childcare. When Nikki finishes her workday, she picks up the children from school or childcare. On some days, the parties' daughter attends a preschool speech program and rides a bus back to the apartment after the program is completed. Nikki testified that the children will not need daycare for the foreseeable future.

Nikki testified that she does not believe that Kody is able to spend sufficient time with the children, in part due to his work schedule. Kody testified that he works at the same home distribution center as Nikki. His current schedule is 2:30 p.m. until 1 a.m. every Monday, Tuesday, and Thursday. He also works 8 p.m. until 1 a.m. on Wednesdays and Sundays. There was also evidence that Kody often works overtime hours, also in the evening or night time hours.

Kody currently carries health insurance for the minor children. Nikki testified that she is currently enrolled in health and dental insurance through her work. She testified that she will have to enroll in a family health insurance plan to include both her oldest child and her newest child. According to her, it will not cost any additional money to cover the three children she shares with Kody when she enrolls in the family health insurance plan in March 2020 when her newest child is born. She also testified that she does not contribute to any retirement plan at her current job. Kody testified that he also is not participating in any retirement plan. Neither party's paystubs reflected any contributions to a retirement program.

On January 6, 2020, the district court entered a decree of dissolution. The court found that the marriage between Kody and Nikki was irretrievably broken. The court found that Nikki was a fit and proper person to be awarded care, custody, and control of the minor children and that it was in the best interests of the minor children for Nikki to be awarded both sole legal and physical custody of the minor children, subject to the parenting time schedule and provisions in the incorporated parenting plan. According to the parenting plan, Kody was granted parenting time with his two youngest children, every other weekend from Friday to Sunday. However, the court found it was in the best interests of the oldest son to live with Nikki full time without requiring that he spend any time with Kody. The court did find that the oldest son could visit Kody when his schedule allows.

In its child support calculation, the court attributed a deduction for retirement of $108.51 to Nikki and $204.68 to Kody. The court based its order for child support on the Nebraska Child Support Guidelines and ordered Kody to pay $1,355 per month in child support for the three minor children. The court required that Nikki be the party who should enroll the children in a health insurance plan. It also ordered that Nikki and Kody should each be responsible for 50 percent of the reasonable and necessary unreimbursed health care expenses for the children. The court further ordered that each of the parties should be responsible for 50 percent of all child care expenses incurred on behalf of the minor children. Additionally, the court found that the parties should each be responsible for 50 percent of all extracurricular and extraordinary expenses. Kody appeals to this court.

ASSIGNMENTS OF ERROR

On appeal, Kody assigns numerous errors. First, he alleges that the district court erred in failing to award joint legal and physical custody of the minor children. Next, he asserts that the amount of parenting time allocated to him in the court's parenting plan is not in the best interests of the children. Third, he alleges that the district court erred in calculating his child support obligation. Specifically, he asserts that the district court failed to order child support consistent with a joint custody arrangement, and that the court erroneously utilized a deduction for retirement in its calculations, incorrectly allocated the responsibility for maintaining health insurance and determining the credit due to Nikki on the child support calculation, failed to require Nikki to pay the first $480 per child per year of the nonreimbursed medical expenses of the children, and erroneously ordered Kody to pay 50 percent of all extracurricular extraordinary expenses of the minor children.

STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019). In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and

observed the witnesses and accepted one version of the facts rather than another. *Schrag v. Spear, supra.* An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

ANALYSIS

*Legal Custody.*

When custody of a minor child is an issue in a proceeding to dissolve the marriage of the child's parents, child custody is determined by parental fitness and the child's best interests. *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007). The Parenting Act, Neb. Rev. Stat. §§ 43-2920 to 43-2943 (Reissue 2016 & Cum. Supp. 2018), defines "[j]oint legal custody" as the "mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health." § 43-2922(11). Courts typically do not award joint legal custody when the parties are unable to communicate effectively. See *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009). However, the Parenting Act authorizes a trial court to award joint custody in dissolution actions if, after a hearing in open court, the court finds that joint physical custody or joint legal custody, or both, is in the best interests of the minor child regardless of any parental agreement or consent. See *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019).

The district court granted sole legal custody to Nikki. At trial, Nikki testified that she had been chiefly responsible for scheduling and taking the children to medical appointments. Nikki was the parent who attended almost all of the parent-teacher conferences and made the majority of the major decisions regarding the children. In contrast, the evidence indicates that Kody did not take an active interest in the children's education and activities. Although he contends that he was working at the time of their medical appointments, he testified that at the earliest, he went to work at 2:30 p.m. Nikki testified and Kody agreed that since the parties' separation, problems with communication existed and that conversations regarding medical issues often devolved into arguments. Issues also existed as to notification regarding medical appointments and problems at school. However, Nikki testified that when she called or texted Kody after their separation, Kody often did not respond.

Upon our de novo review, we find no abuse of discretion in the district court's determination that it was in the best interests of the children for Nikki to have sole legal custody. Nikki was primarily responsible for making the major decisions concerning the children prior to the parties' separation and continued to do so during the proceeding's pendency. Both parties contributed to the problems in communication. However, the evidence demonstrated that Kody routinely used profane and belittling language toward the family that was unproductive. In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). Given the deference given to the district court and the evidence documenting the parties' inability to communicate on serious matters concerning their children,

we cannot say that the court abused its discretion when it determined that joint legal custody was not in the best interests of the minor children.

*Physical Custody.*

Joint physical custody is defined as mutual authority and responsibility of the parents regarding the child's place of residence and the exertion of continuous blocks of parenting time by both parents over the child for significant periods of time. *State on behalf of Kaaden S. v. Jeffery T., supra.* Where the parents have not agreed to joint custody, Neb. Rev. Stat. § 42-364(3) (Reissue 2016) requires that before joint custody may be ordered, there must be a hearing in open court and an express finding that joint custody is in the child's best interests. *State on behalf of Kaaden S. v. Jeffery T., supra.* Concerns regarding parental maturity and possible behavioral consequences to a child from spending substantial amounts of time with each parent may be valid in any given case and in that event should be considered in light of all the other factors and circumstances in arriving at a custody and parenting time arrangement that serves the best interests of the child at issue. *Id.*

When determining the best interests of the child in deciding custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *Id.* In addition to statutory best interests factors, a court making a child custody determination may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy the educational needs of the child. *Schrag v. Spear, supra.*

Based on our review of the record, we do not find that the district court abused its discretion in awarding sole physical custody of the minor children to Nikki. The record reflects that neither parent was perfect. At the time of trial Kody had more space for the children, but both parties were living in the residences of new significant others. Nikki and Cox testified they were looking for larger living quarters. In addition, significant evidence was presented as to Kody's unwillingness to keep clean living conditions in his home. More significantly, Kody struggled to build any type of bond with his oldest son due to his use of physical punishment and degrading language focused on him. Nikki testified that over time Kody was utilizing the same tactics toward the younger children. Kody admitted the use of both profane language and physical punishment including hitting the children in the back of the head. While he professed that he was making efforts to utilize alternative punishments to hitting the children, he stated that he saw no harm to the language he used toward the children. He stated that he was raised that way, and could see no reason to act differently. In addition, there was uncontroverted testimony of injuries incurred by the parties' daughter while under Kody's supervision.

Additionally, Kody's work schedule was not conducive to having joint physical custody of the children. Kody works in the evening and overnight hours. On many days, by the time the

children would arrive home from school, Kody would be at work and would not return prior to the children's bedtime. Finally, the evidence was clear that the relationship between the parties' oldest son and Kody was strained at best. By all accounts, the evidence indicated that no emotional bond existed between them. While concerns do exist about the size of Nikki's residence, the evidence, namely, her promptness in making decisions and ability to obtain compliance with her directives to the children, demonstrates that she has and continues to be the parent who is actively parenting the children, developing a relationship with them, and acting on their behalf. As such, we cannot say the court abused its discretion in awarding Nikki sole physical custody of the children.

*Kody's Parenting Time With Children.*

In his brief on appeal, Kody assigns as error that the district court "erred in limiting [his] parenting time with the minor children as set forth in the Parenting Plan ordered by the [district] court." Brief for appellant at 4. However, in his argument, he only argues that the district court erred in not awarding the parents joint legal and physical custody of the minor children. He does not separately argue how the district court erred in limiting his parenting time with the minor children. Errors that are assigned but not argued will not be addressed by an appellate court. *Maranville v. Dworak*, 17 Neb. App. 245, 758 N.W.2d 70 (2008). An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016). Because this error was assigned but not argued, we do not address it further.

*Child Support for Joint Custody.*

In his brief on appeal, Kody argues that "[a] joint custody physical and legal custody order should have been ordered . . . [a] child support custody calculation proposed by Kody . . . with adjustments for health insurance . . . would be consistent with the evidence and in the best interest of the children." Brief for appellant at 26. We read this argument to mean that child support consistent with an order for joint custody should have been ordered. This argument appears to be predicated on Kody's argument that the parties should have been granted joint physical custody. Since we have affirmed the district court's decision to grant Nikki sole physical custody, Kody's argument is moot. Because we have found no abuse of discretion in the district court's decision to grant sole physical custody of the children to Nikki, we need not consider this assignment further.

*Inclusion of Retirement Deduction in Child Support Calculation.*

Kody alleges that the district court erred when it included retirement deductions in its child support calculation. Nikki concedes that the district court should not include retirement deductions in the child support calculation. We agree with the parties. According to the district court's child support worksheet, the district court deducted $108.51 from Nikki's monthly income and $204.68 from Kody's monthly income for their retirement contributions. The district court did not explain how it calculated this number but it appears that the deduction is made by taking 4 percent of each of Kody and Nikki's gross income.

The Child Support Guidelines provide that mandatory retirement contributions should be deducted to arrive at monthly net income. Neb. Ct. R. § 4-205. Where no mandatory retirement

plan exists, a deduction shall be allowed for a continuation of actual voluntary retirement contributions not to exceed 4 percent of the gross income from employment. *Id.* The testimony at trial demonstrated that neither Kody nor Nikki made retirement contributions. Moreover, the paystubs admitted into evidence demonstrate that neither party contributed to retirement. Because there was no evidence to show that the parties were contributing to their retirement, we find that the district court erred by including a retirement deduction in its calculation for both Nikki and Kody. We have attached to this opinion as Appendix 1 our child support calculation which among other changes removes any retirement deductions from the calculation.

*Health Insurance.*

In his brief on appeal, Kody argues that Nikki "receives a credit for the entire [health insurance] premium to cover her children. This credit increased the amount of child support Kody pays." Brief for appellant at 27. He then argues that there should be a limitation on the health insurance premium credit for Nikki because she was going to enroll in a family health insurance plan for her oldest child and her new child. Enrolling in this family health insurance plan would cost the same whether she enrolled with the three children from this relationship or without them. Kody argues that the amount of the credit should be reduced to 3/5 of the total monthly premium paid so as to reflect the number of children of the marriage enrolled in the plan as compared to the total number of children covered. This would reduce the total obligation from which his portion of the child support is computed, but would still be of some benefit to Nikki who is paying for the insurance. Nikki argues that since she would have to pay the same amount whether some or all of her children are covered, the entire amount of the premium paid should be added to the total child support obligation.

According to the Child Support Guidelines, the increased cost to the parent for health insurance for the children of the parent shall be prorated between the parents. Neb. Ct. R. § 4-215(A). The increased cost is to be added to the monthly support and then prorated between the parents to determine the share of monthly support. *Id.* The parent who pays the premium receives a credit against his or her share of the monthly support. *Id.*

We agree with Kody's position. While we agree that Nikki would pay the same premium even if the only children covered were those of the marriage, one could as easily argue that she should get no credit for the premium paid since she would have purchased the health insurance for her other two children in any event. Under that argument, the additional cost for the children of the marriage would be zero. Kody's position strikes an appropriate balance. It allows a percentage of the premium paid to be figured into the total obligation, thus increasing his child support obligation to help offset Nikki's costs, but it does not place the entire burden on Kody in a situation where Nikki benefits from having all of her children covered.

Appendix 1, our child support calculation, reflects Kody's suggested approach. According to our calculation 3/5 (60 percent) of the monthly premium for the children is $315.89. That figure reduces the total obligation accordingly. As a result of this change and the removal of the retirement deductions, Kody's monthly child support obligation for three children is $1,268 for three children, $1,064 for two children, and $799 for one child. We modify the decree of

dissolution accordingly and instruct the district court to replace its child support calculation with our calculation in Appendix 1.

*Unreimbursed Medical Expenses for Children.*

According to the Child Support Guidelines, the child support order shall address how the parents will provide for the children's health care needs through health insurance, as well as, the nonreimbursed reasonable and necessary children's health care costs. Neb. Ct. R. § 4-215. Children's health care expenses are specifically included in the guidelines and effective January 1, 2020, the health care expenses are included in the amount of up to $250 per child per year. *Id.* All nonreimbursed reasonable and necessary children's health care costs in excess of $250 per child per year shall be allocated to the obligor parent as determined by the court, but shall not exceed the proportion of the obligor's share of the monthly support. *Id.* Prior to this amendment, the obligor parent was not required to pay for nonreimbursed health care expenses until the first $480 had been paid by the other parent. The Child Support Guidelines' reference to an obligor refers to the party ordered to pay child support. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019).

Nikki concedes that the court erred by ordering that each party pay 50 percent of nonreimbursed health care expenses. Upon our review of the record, we do find that the district court failed to include the costs of nonreimbursed reasonable and necessary health care costs per child that exceeded $250 or $480 per year. We note that the order was entered on January 6, 2020, after the change in the Child Support Guidelines was effective. In our de novo review of the record, we apply the current guidelines to determine the level of obligation concerning nonreimbursed medical expenses. See *Stuczynski v. Stuczynski*, 238 Neb. 368, 471 N.W.2d 122 (1991) (applying current guidelines as opposed to guidelines effective when case was decided to result in fair and equitable child support order). Kody is the obligor parent as the parent who is ordered to pay child support. Therefore, Kody should be required to pay a percentage of nonreimbursed health care costs in excess of $250 per child per year not to exceed his proportion of his parental contribution as required by Neb. Ct. R. § 4-215(B). Thus, we reverse this portion of the order and order the district court to require Kody to pay a set percentage of nonreimbursed health care expenses after Nikki has paid the first $250 per child per year. Kody's portion of these expenses shall not be set higher than 63.55 percent.

*Payment of Extracurricular Activity, Education, and Extraordinary Expenses.*

The decree of dissolution required Kody to pay 50 percent of the educational, extracurricular, and other extraordinary expenses. Kody alleges that the district court erred in ordering him to pay half of all educational, extracurricular, and extraordinary expenses of the minor children. Kody assigns that he should not have been required to pay a percentage of any of these expenses. Nikki concedes that the court's order in this regard was error. We agree.

Neb. Rev. Stat. § 42-364.17 (Reissue 2016) states that a decree of dissolution "shall incorporate financial arrangements for each party's responsibility for reasonable and necessary medical, dental, and eye care, medical reimbursements, day care extracurricular activity, education, and other extraordinary expenses of the child and calculation of child support

obligations." It has been previously explained that a decree of dissolution which includes an award of custody and child support is required to include such language. See *Dooling v. Dooling*, 303 Neb. 494, 930 N.W.2d 481 (2019) (stating that § 42-364.17 requires that decree of dissolution include an allocation of these expenses). See, also, *Leners v. Leners*, 302 Neb. 904, 925 N.W.2d 704 (2019) (explaining that § 42-364.17 requires decree to address parties' responsibility for certain child expenses). However, the paramount concern remains the best interests of the child; child support cases should be governed by flexible, fact-specific inquiries. *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019). See, also, *Kelly v. Kelly*, 29 Neb. App. 198, 952 N.W.2d 207 (2020).

With these principles in mind, we review the district court's decision to require Kody to pay 50 percent of educational, extracurricular, and extraordinary expenses in addition to his child support. First, we note that as we found in *Kelly*, there is no requirement that a joint custody calculation be utilized before awarding these expenses. In addition, we find that the district court was correct in including a finding on these expenses given the language contained in § 42-364.17. However, based on our review of the record, we find that the court abused its discretion in ordering Kody to pay 50 percent of all childcare, education, extracurricular, and extraordinary expenses based on our fact-specific inquiry to maintain the best interests of the children.

We first note that in her complaint, Nikki did not pray for this relief. In her complaint, she included a general equitable prayer requesting further relief as the court deemed just and equitable. While this request is to be construed liberally and may justify granting relief in addition to that contained in the specific prayer, the party must still show that they are entitled to the relief under the pleadings and the evidence. *Chaney v. Evnen*, 307 Neb. 512, 949 N.W.2d 761 (2020). Nikki only presented evidence as to child care and even that evidence was minimal. She testified that it would be fair to have the child care expenses split in proportion to the parties' income; however, she did not foresee that she would need child care in the future. In addition, Nikki did not produce any evidence as to the existence of education, extracurricular, or extraordinary expenses that would justify the court's order. Based on the lack of evidence adduced coupled with Nikki's concession on appeal that she is not seeking a division of these expenses, we find that the district court abused its discretion by determining that Kody should be responsible for 50 percent of education, extracurricular, and extraordinary expenses. Accordingly, we vacate this portion of the district court's order.

CONCLUSION

For the reasons discussed above, we affirm the district court's decisions with respect to custody and parenting time. We modify the child support calculation to eliminate the retirement deductions for the parties and to prorate the amount of the health insurance credit between the children of the marriage and Nikki's other children. We reverse the district court's decision which did not require Nikki to pay the first $250 of nonreimbursed health care expenses per child per year before requiring Kody to pay a percentage of additional expenses, and we reverse the court's requirement that Kody pay 50 percent of education, extracurricular, and extraordinary expenses. We remand the matter to the district court with directions to adopt the child support calculation appended hereto and to determine what percentage of unreimbursed health care expenses Kody

should pay, and to eliminate its 50 percent allocation of education, extracurricular, and extraordinary expenses to Kody.

AFFIRMED IN PART AS MODIFIED, AND
IN PART REVERSED AND REMANDED.

Case Name: <u>Eicke v. Eicke</u>
Worksheet 1 - Basic Income and Support Calculation

Nikk!: Single/ 2.5 Exemptions / Regular Employment
Kody: Single/ 2.5 Exemptions/ Regular Employment

| Line | Description | Nikki | Kody |
|------|-------------|-------|------|
| 1 | Gross Earned Taxable Income | $2,712.67 | $5,117.08 |
| 1 | Gross Unearned Taxable Income | $0.00 | $0.00 |
| 1 | Tax-Exempt Income | $0.00 | $0.00 |
| 2.a | Taxes - Federal | $183.44 | $541.38 |
| 2.a | Taxes - Nebraska | $50.63 | $205.64 |
| 2.b | FICA - Social Security / Railroad Retirement* | $168.19 | $317.26 |
| 2.b | FICA - Medicare | $39.33 | $74.20 |
| 2.c | Retirement | $0.00 | $0.00 |
| 2.d | Previously Ordered Support | $0.00 | $0.00 |
| 2.e | Regular Support for Other Children | $0.00 | $0.00 |
| 2.f | Health Insurance Premium for Parent | $135.63 | $255.85 |
| | Other Deductions | $0.00 | $0.00 |
| | Child Tax Credit | ($0.00) | ($0.00) |
| 2.g | Total Deductions | $577.22 | $1,394.33 |
| 3 | Net Monthly Income | $2,135.45 | $3,722.75 |
| 4 | Combined Net Monthly Income | $5,858.20 | |
| 5 | Combined Net Annual Income | $70,298.40 | |
| 6 | Each Parent's Percent | 36.45% | 63.55% |
| 7 | Monthly Support from Table (3 Children) | $1,680.00 | |
| 8 | Health Insurance Premium for Children | $315.89 | $0.00 |
| 9 | Total Obligation | $1,995.89 | |
| 10 | Each Parent's Monthly Share | $727.50 | $1,268.39 |
| 11 | Credit For Health Insurance Premium Paid | ($315.89) | ($0.00) |
| 12 | Each Parents' Final Share (3 Children, rounded) | $412.00 | $1,268.00 |

Worksheet 4 - Number of Children Calculation (final shares are rounded to the nearest whole dollar)

| No. Children | Table Amt. | Table+ Health Ins. | Nikki's Share of Total | Kody's Share of Total | Nikki's Final Share | Kody's Final Share |
|------|------|------|------|------|------|------|
| 3 | $1,680.00 | $1,995.89 | $727.50 | $1,268.39 | $412.00 | $1,268.00 |
| 2 | $1,359.00 | $1,674.89 | $610.50 | $1,064.39 | $295.00 | $1,064.00 |
| 1 | $942.00 | $1,257.89 | $458.50 | $799.39 | $143.00 | $799.00 |